## PALMER MANUFACTURING COMPANY *v.* DREWRY & LAVENDER.

1. The evidence was conflicting ; that of some of the witnesses being sufficient to authorize the verdict which was rendered. It can not, therefore, be ruled that the verdict was contrary to the evidence.

2. That counsel for the plaintiff made improper remarks in referring to defendant, in his argument to the jury, is not a cause for a new trial, when there was no motion for a mistrial, nor any ruling of the court, in relation thereto, invoked by counsel for the defendant.

3. Assignments of error, made in a motion for a new trial, that the verdict was contrary to specified portions of the charge of the court, are in effect complaints that the verdict is contrary to law. So treating those made in this case, they are without legal merit.

4. Instructions to the jury that, if one was the agent of another in conducting a particular negotiation and business, the principal is always bound by the act of his agent, when qualified by the further legal proposition that whatever was done by the authorized agent of the defendant in a particular case is binding on him, are in substance correct ; and the failure of the judge to add thereto 'that the principal is only bound by acts of the agent done within the scope of his authority is not cause for a new trial, when there is no request to add this additional instruction, and no exception to the omission to do so.

Argued April 5,—Decided April 27, 1901.

Complaint. Before Judge Harris.. Meriwether superior court. August 28, 1900.

Drewry & Lavender sued the Palmer Manufacturing Company on an open account, which was mainly for staves alleged to have been furnished by the plaintiffs to the defendant, and on which there was alleged to be a balance due of $716.91. A verdict for $500.91 principal, and $59.88 interest, was rendered against the defendant; and error is assigned on the overruling of its motion for a new trial. The grounds of the motion are sufficiently stated in the opinion. The plaintiffs had a contract with the Atlanta Cooperage Company to saw and deliver to it certain staves; and there was evidence that this contract, after some changes had been made in it, was accepted in behalf of the defendant, in the place of the Cooperage Company, by one Moore, who, it was claimed, was the authorized representative of the defendant to act for it in this matter; and that the staves were furnished to the defendant in accordance with the contract. The defendant denied that it had assumed the contract with the Cooperage Company, and contended that its contract with the plaintiffs was entirely independent of that made with the Cooperage Company, and was different from that set up by the plaintiffs. The bill of particulars contained 14 items of charges against the defendant, and a credit of cash "from April 9 to July 15" of $609.74. The defendant contended that it had settled in full for the first seven items — seven carloads, identified by the dates and the car numbers, furnished from April 6 to June 17, 1898, and containing 78,000 staves, for which there was a charge of $11 per thousand, aggregating $858. It contended that in this settlement a part of the staves were, by consent of the plaintiffs, rejected as not coming up to the requirements of the contract. It appears that under the contract the staves were to be subject to inspection, and were to come up to a certain standard, but the evidence was conflicting as to what the standard was. The staves charged for in the eighth item, 21,000 "short staves," at $4.50 per thousand, $94.50, the defendant contended were rejected, because below the standard. The plaintiffs contended that the defendant's agent, Moore, instructed them to ship these identical staves. The ninth and tenth items, amounting respectively to $66 and $32, were for staves claimed to have been delivered at Brooks Station. The defendant contended that the agreement was that the staves were to

be delivered at Hapeville, and that it was not liable for any shipped elsewhere.   The plaintiffs contended that, under the contract, they were to be delivered at the nearest railroad depot to the place where the defendant's work was carried on, and that Brooks Station was the nearest point of delivery.   The eleventh and last item, 22,000 staves at the mill, at $4 per thousand, $88, the plaintiffs contended the defendant agreed to take under an arrangement by which the existing contract was to be abandoned and the plaintiffs were to work for a salary from the defendant, and by which the defendant was to take all the staves that the plaintiffs had on hand.   The twelfth item was, "salary of man sawing staves, $75."   This was for services of Lavender, one of the plaintiffs, in superintending the sawing of staves.   The plaintiffs contended that the defendant had agreed to furnish a man to do this work, but failed to do so.   The thirteenth item was $18 for loading staves, which the plaintiffs contended the defendant had agreed to do, but did not do, and which, therefore, the plaintiffs did.   The fourteenth item was for an "overplus" in the staves, $95.15.   The defendant denied indebtedness for any of these items.

*H. W. Hill* and *King & Spalding*, for plaintiff in error.
*McLaughlin & Jones*, contra.

LITTLE, J.   1. There was much conflict in the evidence.   Indeed it must be said that the witnesses for the plaintiff and those for the defendant scarcely agreed on any single fact.   The original record is voluminous.   We have gone over it as an entirety, with the result of having no fixed opinion as to which party should prevail as to the facts.   We are not prepared to say from this record that the verdict is contrary to the evidence in the case.   As the jury is the tribunal established by law to ascertain, under the evidence, what the truth was, and there was evidence which supported their finding, it must stand.   The pressure of the case, so far as the facts are concerned, rested on the question whether Moore was the agent of the Palmer Manufacturing Company in the purchase of the staves which Drewry & Lavender contended that they sold and furnished to the Manufacturing Co.   A careful examination of the brief of evidence on this point induces us to believe that the verdict of the jury, determining as a fact that he was such agent, is authorized by the evidence, as a whole, relating to

this subject. It may be that a preponderance of the evidence would indicate that he was not; but in passing on the question whether the court erred in overruling the motion for a new trial on the ground that the verdict was contrary to the evidence, this court can not be governed by a consideration as to the preponderance of the evidence; but if the record contains evidence which supports the verdict of the jury, and as the jury is not bound to return a verdict according to the evidence of the greatest number of witnesses, it follows, where they have in effect determined that the preponderance lies in a given direction, that this court would be usurping their function were we to declare that the jury should have taken the evidence of certain witnesses as a basis for their verdict. Under the evidence in this case we can not say that the court erred in overruling the motion for a new trial as being without evidence to support the verdict. But it is contended that there is no evidence upon which the jury could have based their verdict for the amount which they found in favor of the plaintiffs. The amount for which the plaintiffs sued was $716.91, besides interest. The jury returned a verdict for $509.91. A number of the items for the value of which suit was instituted were disputed. Take, for instance, that for the salary of a man for sawing staves, which was charged in the account at $75, and the item for loading staves, charged at $18, and another item, that of overplus on staves, $95.15. The jury, under the conflict in the evidence, might have determined that one or all of these items were not proper charges against the defendant. We can not so do. But, in the conflict as to the facts regarding these and other items in the bill of particulars, it is probable that the jury determined that some of them were not proved. How this is we can not say, but there was certainly evidence which, if the jury believed it, would have afforded a margin for the reduction of the amount for which the action was instituted.

2. Another of the grounds on which a new trial is sought is, that counsel for plaintiffs prejudiced the minds of the jury against the defendant, by alluding to defendant in his speech before the jury as "Yankee thieves banded together and coming down here for the purpose of swindling our people," when there was no evidence of the truth of the statement. Conceding, as we do, the impropriety of the remarks as stated in the motion (see *Towner* v. *Thompson*,

82 *Ga.* 744), it does not appear that counsel for the defendant, at the time they were made or afterward during the trial, made any motion in relation thereto or invoked any ruling of the court thereon.

It was said by Chief Justice Simmons in the case of *Metropolitan R. Co.* v. *Johnson*, 90 *Ga.* 500: "It is as much his [counsel's] duty to object to improper argument as it is to object to improper evidence, and, in the former case as well as in the latter, if he permits it without objection, he can not demand a new trial on the ground that the jury may have been affected by it. In that case the court ruled: "The proper method of taking advantage of any misconduct of counsel, amounting to cause for a new trial, is by prompt objection and a request to withdraw the case from the jury." In the case of *Augusta Ry. Co.* v. *Glover*, 92 *Ga.* 132, this court ruled that improper statements made by counsel in the argument, to which the attention of the presiding judge was not called in some way, would not require or justify the grant of a new trial. It was ruled by this court in *Robinson* v. *State*, 109 *Ga.* 506, that when any exception was taken to objectionable remarks made by the solicitor-general in his argument to the jury and no ruling of the court was invoked thereon, such remarks afforded no ground for a new trial. For a similar ruling see *Bridges* v. *State*, 110 *Ga.* 246. It must, therefore, be ruled that, in the absence of any motion by counsel for the defendant which invoked a ruling of the judge during the trial in reference to the remarks now complained of, there was no error in overruling the motion for a new trial on this ground.

3. The first, third, fourth, fifth, and sixth grounds of the amendment to the motion for a new trial allege that the verdict of the jury was contrary to specified portions of the charge given to the jury. In effect these are complaints that the verdict was contrary to law. *Athens Mfg. Co.* v. *Rucker*, 80 *Ga.* 291; *Rushin* v. *Tharp*, 88 *Ga.* 783. They do not allege error in any of the several portions of the charges recited. The extracts state the law applicable to the theory of the case which the defendant entertains. We are not prepared to say that the verdict in this case is contrary to law.

4. It is further complained that the court erred in charging the jury on the law of agency. In one part of his charge the judge instructed the jury that "if Mr. Moore was the agent of the Palmer Manufacturing Co. *in conducting this negotiation and business*, why,

the Palmer Co. is bound by whatever their agent agrees to do," etc. In another part of the charge he instructed the jury as follows: " Now, gentlemen, as before stated to you, the principal is always bound by the act of his agent. Whatever was done by the authorized agent of the defendant in this case is binding on him." The assignments of error made to these portions of the charge are general, and no specific exception (that is to say, alleging in what particulars the charges were error) is made; and while these instructions may be open to the criticism that they might have been more clear and explicit, no vice of this kind is pointed out in the exception taken to them. This being so, and the charges complained of being in substance good, as we shall undertake to show, the broad and general assignments of error are not well taken. It is insisted on the part of the plaintiff in error that the court should have given the law of special agency in charge, and should have added to these charges the qualification, that, to bind the principal, the act of the agent must have been within the scope of his authority. The able and learned judge who presided at the trial of this case undoubtedly had this principle of law in his mind in using the words contained in the charges excepted to. In the one case he charged that if Moore was agent in conducting this negotiation and business, the Palmer Manufacturing Co. would be bound; and in the other, that the principal is always bound by the act of the agent, qualifying it by the further statement that whatever was done by the *authorized agent* of the defendant in this case is binding on him. Now, if Moore was the agent of the Palmer Company in conducting the negotiations and business of purchasing these staves, then it necessarily follows that Moore was acting in such negotiations and business within the scope of his authority. So, if a thing be done by an authorized agent, it necessarily follows, because he was authorized, that the agent was acting in the scope of his authority. So that, while the charge on this subject might have been fuller and more explicit, we are not prepared to say that it was needful that it should be so. It is a sound principle of law that an act which is done by an authorized agent is binding upon the principal; and that if one was agent in conducting a particular business, his act was the act of the principal. While these instructions on the subject of agency might well have been amplified, they contain, as we understand them, sound principles of law without

any additions. Had the defendant desired more specific instructions in relation thereto, he should have prepared and submitted a request for the same. Not having done so, the instructions as they were given were legally sufficient, and the failure to add any other correct principle of law affords no ground for a new trial.

*Judgment affirmed. All the Justices concurring.*