## LANDRUM, administratrix, *v.* RIVERS.

1. Specific performance of a contract to make a will in favor of another, where the party claiming the right to specific performance has performed his part of the contract, will be decreed where the contract to make the will is shown with the requisite degree of certainty and definiteness.

2. The court did not err in refusing to give in charge a lengthy written request, which in certain parts was argumentative in character, and which also instructed the jury that specific performance of a contract like that referred to in the first headnote would not be enforced where refusal to enforce it would not amount to a fraud on the party seeking the equitable relief or specific performance.

3. Other portions of the requests to charge examined and held to have been sufficiently covered, where pertinent and legal, by the charge as given.

4. The court's charge in submitting the terms of the contract in question was full, apposite, and correct, sufficiently covering the subject; and there was no error in refusing to give the charge requested upon this subject.

5. The court's charge as to the main issue in the case, that is, as to what the contract was and whether the contract as alleged was made or not, was sufficiently full and comprehensive, and the court did not err in refusing to give the charge requested upon this subject.

6. The portions of the court's charge, in which he states the issues as to the agreement upon the part of the decedent as to what he would leave by his will to the petitioner upon certain considerations stated, was not misleading, but correctly presented the real issue.

7. The husband of the plaintiff was not a party to this suit, nor was he a party to the contract in such a sense as to render him incompetent as a witness.

8. The testimony of the physician attendant upon the decedent in his last illness, tending to show that he then desired to make a will in favor of the petitioner in the case, was competent, relevant, and material, and the court did not err in admitting it over objection.

9. The construction of a verdict may be aided by a consideration of the pleadings. And giving to the verdict in this case the scope which it should have, under the allegations in the petition and the issues made

by the pleadings, it can not be said that the decree rendered was not authorized by the verdict.

No. 756. FEBRUARY 14, 1919. REHEARING DENIED FEBRUARY 24, 1919.

Specific performance. Before Judge Smith. Campbell superior court. November 5, 1917. See 145 *Ga.* 103.

Mrs. N. C. Rivers brought her equitable petition against Mrs. Exer Ellen Landrum as an individual and as administratrix of the estate of L. A. Brown, in which she prayed, among other things, specific performance of an oral contract to make a will, and for injunctive relief. This petition was filed on May 13, 1915. The allegations of the petition show that Mrs. Landrum's intestate owned a valuable estate, consisting of realty and personalty; that at the time of the making of the contract, specific performance of which was sought, Brown's aged mother was living in the house with him; that he was unmarried and was about fifty-three years of age; that petitioner and her husband and their two children were keeping house in the same county in which Brown lived, he being her uncle. She was engaged in the discharge of her duty, looking after and taking care of her children, waiting on and assisting her husband in making a living, and trying to accumulate property. Brown had no person in his house who could take care of him and look after his mother; and, approaching petitioner, he proposed to her that if she would change her place of residence, procure the consent of her husband to allow her to live in the house with him, and bring her children, live in his house, and be a comfort to him and his mother, treating them kindly and affectionately during their lives, and would look after and nurse the mother during her life, cook for and wait on him and his mother, he would on his part, as compensation for such services to be rendered by petitioner, execute his last will and testament before his death, and in such will bequeath to her all of the property of every kind which he then owned and which he might acquire between that date and the date of his death. In the same paragraph in which these allegations just set forth are contained it is alleged that the decedent, L. A. Brown, stated to petitioner especially "that the compensation for all this service would be made by him by willing and leaving to her all the property he had at the date of his death of every kind and character." The death of Brown and of his mother is alleged, and that he died without having executed his last will and testament. Certain

money, the proceeds of a life-insurance policy taken by Brown and payable to his estate, it is charged, was sufficient to pay all the debts of the estate, and that plaintiff was willing that the debts should be paid with this money. Full performance of the contract on the part of petitioner was shown; and she prayed that specific performance be decreed, and that the court decree that the property owned by Brown at the time of his death, as set out in the exhibit attached to the petition, is the property of petitioner, and that the defendant be enjoined from administering on it as the property of Brown, or in any way disposing of it or changing the status. There was also a prayer for general relief. Mrs. Landrum, the defendant, was a sister and sole heir at law of Brown.

Upon the hearing of the case the jury returned a verdict in favor of the plaintiff. Upon this verdict the judge rendered a decree. The defendant filed certain exceptions to the decree and also a motion to set aside the decree, and made a motion for a new trial. The motion for a new trial was overruled. The exceptions to the decree and the motion to set aside the decree were also overruled. The defendant sued out a writ of error, bringing the case to this court, and in the bill of exceptions assigned error upon the judgment of the court overruling the motion for a new trial and overruling the exceptions to the decree and the motion to set aside the decree.

*Brewster, Howell & Heyman* and *J. H. Longino,* for plaintiff in error.

*J. F. Golightly, S. Holderness,* and *L. S. Camp,* contra.

BECK, P. J. 1. The plaintiff in error submitted a large number of written requests to charge, which the court refused to give, and error is assigned upon the refusal to give in charge these requests. Among them was the following: "It is not every parol contract which the court will specifically enforce. It will never enforce any parol contract for the sale of land or the making of a will or the testamentary disposition of property, unless the party who is seeking such performance will be defrauded if the contract is not enforced, even if all other elements are shown to exist which would entitle a party to such relief." The court did not err in refusing to give this charge. This charge is not in harmony with the doctrine laid down in other cases decided by this court, that a contract to make a will will be

specifically performed, where the evidence establishes the contract with the requisite degree of certainty (a subject to which we will allude further on in this opinion), and it is shown by the evidence that the party claiming the right to specific performance fulfilled and performed his part of the contract.

2. Another written request to charge, which the court refused to give, was as follows: "The court instructs you, that, since the law has provided what disposition shall be made of the estate of one who dies, the court favors the disposition fixed by the law, and will not, except when a strict compliance is had, permit it to be diverted from the channel so prescribed by the law. The law is very strict in requiring that its provisions for the proper disposition of the estate of the dead shall be observed, and the safety of the estate of every one depends upon their observance. So long as one lives, he is presumed to be able to look after his estate; when he is dead, the law steps in and undertakes to care for it and see that it is legally and properly disposed of. It will see it reaches his heirs at law, or go to his legatees under his last will and testament. The law has thrown around the estates of those who die every safeguard to protect it. It is in the faith of this fact we all labor and toil to accumulate property, feeling that when we die our estates will be safe. It is the duty of the court and jury to exercise great care and extreme caution in the effort to see that the estate of one who is dead shall not be diverted from the channels and removed from the safeguards of law. You see this suit is an effort to take this estate out of the channels prescribed by the law, and that by a parol contract. While such an effort, under the law, may succeed, it can do so only when, under the evidence, which is so strong and convincing and satisfactory that the jury to a reasonable moral certainty are convinced of its truth, and not to enforce it would result in a fraud on the plaintiff, because it is not practical to make her whole by awarding in money the value of her performance or part performance. It is a very serious proposition, after one dies, for an outsider, one who under the law would have no rights or interest in the dead man's estate, to set up a parol agreement, had with the man who is now dead and unable to speak, whereby not a part of his estate, but his whole estate, belongs to her, and not to those upon whom the law cast it. You must realize, gentlemen of the jury, such an effort

is a very dangerous thing, and one that threatens all estates. While the law does not declare such a thing may not succeed, but, on the contrary, it is the law such a contract may be made and may be specifically enforced, yet in its wisdom it has imposed on the party who seeks to enforce such a contract a very heavy burden, in that the contract must be so certain, definite, and clear, and so precise in its terms, as that neither party can reasonably misunderstand them, and prove it by evidence so strong and cogent as to convince the jury to a reasonable moral certainty it was made, and not to enforce it specifically would be a fraud on the plaintiff, because she could not be easily and adequately compensated in money for the performance or part performance of the contract by the plaintiff. In other words, the court will not enforce such a contract save in cases where specific performance is the only remedy that will afford the plaintiff adequate relief and prevent a wrong and injustice to the plaintiff. Therefore, gentlemen of the jury, you see that, under the law, unless the evidence is so strong and convincing as to satisfy you to a reasonable moral certainty the contract was made as alleged, that the plaintiff cannot be compensated easily and adequately in money for the performance or part performance, and that it would result in a fraud upon her if not specifically enforced, then you should not interfere with the laws disposing of this estate, but let it go as the law directs, and leave the plaintiff to her remedy to recover the compensation for the services she claims she rendered, in money." The court did not err in refusing to give this charge. It would have been error for the court to have instructed the jury in the language just quoted. In the first place the charge is argumentative—strongly so. In the next place it is in conflict with the doctrine which is briefly stated in the preceding division of this opinion. Thirdly, it is not law in this State that a contract to make a will will not be enforced specifically unless the refusal to specifically enforce it would be a fraud on the plaintiff, on the ground that she could not be easily and adequately compensated in money for the performance or part performance of the contract by the plaintiff; nor is it law that the court will not enforce such a contract save in cases where specific performance is the only remedy that affords the plaintiff adequate relief and prevents a wrong and injustice to the plaintiff. The case of *Heery* v. *Heery*, 144 *Ga.*

467 (87 S. E. 472), in all the controlling features, is nearly identical with the present case. The differences on the facts of that case and the instant case are differences that do not tend in any way to weaken the claim of defendant in error, but rather to strengthen it, as appears from a careful reading of the record in that case. Among the cases there cited is that of *Banks* v. *Howard,* 117 *Ga.* 94, (43 S. E. 438), and apparently is one of the cases upon which the court based the decision in the *Heery* case. It was said in the *Banks* case: "Contracts under which one of the contracting parties agrees with the other, for a valuable consideration, that he will make a will giving to the other property, either real or personal, have been sustained and enforced in America from the earliest times, and the validity of such contracts seems now to be beyond all doubt." In the case of *Gordon* v. *Spellman,* 145 *Ga.* 682, (89 S. E. 749, Ann. Cas. 1918A, 852), it was ruled: "An oral contract to devise lands falls within the operation of the statute of frauds; but where the party in whose favor the will is to be made has performed his part of the contract; and the other party dies leaving a will in which no devise is made pursuant to the oral contract, the disappointed party may apply to a court of equity for specific performance of the contract, if it is one of such a nature that a court of equity would require specific performance."

3. Requests to charge were also made in writing as follows: (5) Here the law is very strict. It does not look with favor on such a contract, and therefore it requires the very strictest proof to establish such a contract, proof that is convincing and so strong as to convince you to a reasonable moral certainty that it was made, as alleged. (6) Not only must such be the character of the proof, but it must be accurate and definite and certain. It must establish the contract which is alleged. That is, the evidence must establish substantially the exact terms and conditions, every detail as it is laid in the declaration or petition; and unless you are satisfied to a reasonable moral certainty that the evidence of this character the court has referred to, that L. A. Brown, in his lifetime, made such a contract, then that would end your investigation and you should find in favor of the defendant. (8) Then, further, that the plaintiff 'was to cook for her (his mother) and him and nurse him if he should become sick, make his beds or

have it done by her children, look after mending his clothes and seeing they were properly laundered and ironed.' Now these, like those just referred to, are not loose allegations which make no difference whether they are proved or not, but are parts of a parol contract, and they must be established just as alleged, or substantially so, by such evidence as the court has heretofore called your attention to. (9) Then, further, during the life of his mother and his life, this, like the other features of the contract to which the court has alluded, is an important part of the contract, and must also be established by the same character of evidence." So far as the requests just quoted are legal, they are sufficiently covered by the general charge. So far as relates to the character of proof required in cases of this kind the court instructed the jury as follows: "This is a suit in which the plaintiff asks for the specific performance of a contract, and being a suit in reference to the sale or disposition of land, before a contract, a parol contract, for the sale or other disposition of land can be required to be specifically performed, the contract should be made out by the evidence, clearly, satisfactorily, and specifically to the satisfaction of the jury, to a moral and reasonable certainty, and must be substantially the contract as set out in the petition of the plaintiff; and the performance of the contract, the performance of it by the plaintiff, should be shown by the evidence, with the same degree of certainty. The court instructs you as to this particular part of the case, gentlemen of the jury, that the law relating to the preponderance or greater weight of the evidence does not apply, but the evidence must show to your satisfaction clearly and specifically the contract and its terms as set out and alleged in the petition to a moral and reasonable certainty, and that the same was carried out and performed on the part of the plaintiff, that is, the evidence must show to a moral and reasonable certainty as to the contract itself and its terms, and as to its having been carried out by the plaintiff. Evidence has been admitted for your consideration upon the question of the feelings of L. A. Brown towards his relatives, of his feeling towards the family of Mrs. Landrum, and also towards the plaintiff, and evidence as to what he said about what he wanted done with his property, and what he expected to do with it, and all that kind of thing. This evidence, gentlemen of the jury, was admitted and is admitted for your consideration, in order for you

to determine whether a contract was made and entered into or not. If there was no contract made as alleged, then whatever he said about what his desires were, as to where his property would go, or whatever his feelings might have been towards any of the other parties at interest, would not authorize you to find for the plaintiff simply because he desired it to go to her; but, as I stated to you, that evidence is admissible to your consideration, only that you may consider all of the facts and circumstances surrounding the situation, in order that you may arrive at the truth as to whether or not there was such a contract as that made, and, if so, as to whether or not such contract was carried out by the plaintiff in this case, the question for your consideration being as to whether any such contract was made, and, if so, whether it was ever complied with by the plaintiff in this case. If the deceased, Mr. L. A. Brown, made such a contract as the one set out in the plaintiff's petition, and if the plaintiff carried out and performed the duties and services she was required to render under such contract, the plaintiff would be entitled to recover, although it might appear that pending the continuance of such contract the deceased, Mr. L. A. Brown, sold part of the property he had in possession at the time the contract was made. Now, gentlemen of the jury, if you believe from the evidence in this case, under the circumstances which I have given you, that the contract as set out and set up in the plaintiff's petition was actually entered into and made between the plaintiff and Mr. L. A. Brown, clearly and substantially as set out and described in the petition, and then you believe that the plaintiff in this case, Mrs. N. C. Rivers, carried out and performed completely her part under such contract, if such contract was made, and that the deceased, L. A. Brown, failed to carry out his part of the contract, if such a contract was made, that he was to make a will, giving to her all of his property, but that he failed to do so, and died without making any will, and you believe all this to a moral and reasonable certainty, then, gentlemen of the jury, you would be authorized to find for the plaintiff in this case, and the form of your verdict would be, 'We, the jury, find in favor of the plaintiff on the issues in the case'."

4. The court was also requested in writing to charge as follows: "That he would compensate her for such services (that is, the services which the alleged contract set out) by executing a will

and bequeath unto her all the property he then owned and which he would acquire between that date and his death. This, you will observe, is a very important portion of the alleged contract, and that same kind of evidence which the court called your attention to is demanded in regard to this portion of the contract. You will observe this is a provision of the contract, which will not be satisfied by establishing a contract, no matter how strong·and conclusive the evidence may be, that he would make a will and bequeath to her all his property at his death. There is a wide difference between a contract to make a will and bequeath unto her all the property of every kind and character which he then owned and which he would acquire between that date and the date of his death, and a contract 'to make a will and bequeath all his property at his death.' In the one case L. A. Brown would, from the date of the contract, lose all power of disposition of his property he owned or any he might thereafter acquire. The only right he would have over the property he then had or might thereafter acquire would be to use it for the balance of his life. He would have no right to sell it, give it away, or will it to any one except the plaintiff. In the other·case, it would only be what property he might own at his death, he was obligated to bequeath to the plaintiff, having the right to sell, trade with, and dispose of any and all of the property he then owned or might thereafter acquire. Now you look to the evidence and determine whether L. A. Brown made a contract with the plaintiff as she alleges he made. You have a right to consider the character and kind of a man, as disclosed by the evidence, the reasonableness or unreasonableness of such a contract. While its reasonableness or unreasonableness would not affect the contract, if made, it may be considered by you in weighing the evidence, whether a man of the character of L. A. Brown, as shown by the evidence, would or would not be likely to enter into such a contract. In other words, gentlemen, you may and should consider every circumstance, fact, the situation, conditions, character of any and all parties, as shown by the evidence, in determining what is the truth. If you should believe L. A. Brown did not make this alleged contract, that very contract, with all its terms and conditions, just as alleged, then that would end your investigations." We do not think the court erred in refusing to give this charge. It is argumentative, at least

to this extent, that it unduly stresses the importance, or alleged importance, of certain parts of the contract, and impinges, in some parts of it, upon the correct principle .that before the jury could find in favor of the plaintiff they should believe that the evidence had shown with the requisite degree of certainty that a contract, substantially in its terms and conditions identical with the one alleged, had been made as alleged in the petition; and it would have been laying too much emphasis upon the identity of terms and language of the contract for the court to charge that: "If you should believe that L. A. Brown did not make this alleged contract, that very contract, with all its terms and conditions, just as alleged, then that would end your investigations." If the plaintiff alleged a definite contract and showed by evidence, sufficient under the correct rules of law, that a contract substantially the same as the one alleged was made, that would be sufficient so far as regards the establishment of the contract which constitutes the basis of her claim in the case. As a part of his instructions to the jury the court stated fully and clearly the contentions in the petition as to what the contract was. The language employed by him was as follows: "He stated that if petitioner would change her place of residence and would move from the place where she was then living" (this being followed by a full statement of the terms of the contract so far as related to what the complainant was to do) he, "the said L. A. Brown, for such service, would on his part, as compensation for such care and such service to be rendered by her, execute his last will and testament before his death, and in such will and testament would bequeath to her all property . of every kind and character which he then owned, and which he would acquire between that date and the date of his death, stating to her at the time, that while he had considerable property, . . and especially stating to her that her compensation for all this service would be made by him willing and leaving to her all the property he had at the date of his death of every kind and character." This part of the charge states the allegations of paragraph three of the petition, and the charge of the court as given required the jury to find from the evidence that this contract had been substantially proved. If there be a substantial difference between the allegation that the decedent would leave her by will all of his property and the other allegation, made in the same paragraph, that he would

leave her all of the property he then had and all that he might acquire, there was no demurrer on the ground of conflicting allegations and that the two contracts could not be declared upon in the same count. The charge of the court submitted allegations as to the contract as it was made in the petition, and covered the subject fully.

5. The other requests to charge, so far as they were legal and pertinent, were sufficiently covered by the charge as given by the court, and other requests besides those which we have specifically referred to were properly refused, both in view of what we have said above, and for the further reason that they would have tended, had they been given to the jury, to lead them to believe that the court disapproved of contracts like that which it was here attempted to set up, and viewed the same with great suspicion. It is not improper here to say that it may be true that there is always great danger in the law allowing such contracts to be specifically enforced where the contracts rest solely in parol and parol evidence alone is adduced to sustain them. And it may be forcibly argued in such instances that there is great inducement to perjury, whereby the property of a man, after his death, will be diverted from the course which the law has prescribed for it. But the validity of these contracts has been recognized by the courts for a long time, and whether they should be allowed to stand and should be enforced is not now a question for this court, but for the legislature. The lawmaking body knows what the courts have held on this subject, the doctrine that has been repeatedly laid down; and if it is dangerous to the public welfare and is not a salutary doctrine, it is within the province of the lawmaking body of the State to change it and lay down a different rule.

6. Certain charges of the court are excepted to upon the ground that they tend to convey to the jury a mistaken and confused idea as to what the real contract was, and the real agreement upon the part of the decedent as to the property that he would bequeath in his will to the petitioner. It appears from a reading of the charge upon this subject that this question was fully and fairly submitted to the jury. The jury must have understood from the instructions, and no doubt did understand, that if they believed that it was established with the requisite degree of certainty and definiteness by the evidence that the decedent,

L. A. Brown, agreed, in consideration of certain things to be performed by the petitioner, he would bequeath her in his will all the property that he then had or that he might acquire between that date and his death, or that if he agreed upon the consideration stated that "he would leave her all of his property at his death," they should find in favor of the petitioner; and in view of the allegations in the third paragraph of the petition the court did not err in submitting this issue to the jury.

7. The seventh ground of the motion for a new trial is as follows: "The husband of the plaintiff, Urma Rivers, being sworn as a witness for the plaintiff, testified in regard to the alleged contract as follows: By counsel for plaintiff. Q. 'How came you to move to Mr. Brown's house?' A. 'We were living on his mother's place. I was farming. He came down there to get me to help him cut some stock; he said he wanted to build more rooms to the house; he made a contract with Clyde to move to his house. He said he told her if she would move to his house and take care of his mother her lifetime, take care of him his lifetime, he would make his will and will her what he had and all he would get before he died. My wife was there at home when he told me that; she heard it. I told her it would be right smart on her, but, if she thought she could do the work and wait on him, we would move there. He was present. We moved there after we got the crop gathered.' On cross-examination, in answer to the questions propounded by counsel for defendant, as follows: Q. 'Tell the jury just what he said the contract was.' A. 'Well, he came down to my house in August to get me to help him to cut some stock; he wanted to build some to the house. He said he had made a contract with Clyde to move to his house. He said if she would move to his house and take care of his mother her lifetime, and stay on and take care of him his lifetime, that he would make his will and will her all he had got and all he would get before he died.' Q. 'That was all, he stated, of the contract that he made; that was all of it, wasn't it?' A. 'That is all I remember he said.' Q. 'You made an affidavit in this case didn't you, written by your lawyers?' A. 'Yes, sir.' Q. 'Well I will read you the affidavit as quoted in the bill of exceptions: "In the month of August, 1910, L. A. Brown came to the house of affiant, and in the presence of affiant's wife stated to affiant that

he, the said L. A. Brown, desired to have some stock cut in order to add to the house that he was then living in, in order to make it large enough for affiant and his wife and children to move into the house and live in, and he wanted affiant to come and help him cut stock for that purpose, and he then stated to affiant as follows: that he had agreed with Clyde, he called her, affiant's wife, that if she would move into the house with him and wait on his mother in sickness, and stay with her during her life, and stay on with him during his lifetime and to wait on him and keep the house and do the cooking, and he stated that he would expect her to mend his clothes and keep them up and do his sewing, and stay there and do that work as long as his mother lived, and then until he died; that he would execute his will before he died and will her all of his property of every kind; and he went on to state in the presence of affiant's wife that this was an agreement he had made with her, and that he wanted to enlarge the house and add five rooms to the house, so there would be ample room there for affiant and his family and L. A. Brown, and he stated to affiant that it would be expected that affiant would work the land and pay the rent just like he had been paying heretofore, that is to say, affiant had been working on the place of Mrs. Elizabeth Brown's and paying the rent over to L. A. Brown; and he stated to affiant that if affiant would go on and pay the rent and act just like he had been acting so far as the rent was concerned, he expected Clyde, affiant's wife, to move into the house after it was fixed, and to wait on his, L. A. Brown's, mother during her life-time and then to wait on him, to do his mending and sewing and cooking, and live in the house with him until his death. He further stated that he would not require her to furnish the provisions, he expected to pay for half the provisions and put them at the house, and that he would be charged no board, but that she would do all the cooking, and that she would be at no expense about the family, except he would really buy and place at the home half of the provisions to be used, and he stated that affiant's wife and affiant's children would live in the house with him and she would do this waiting on him, and waiting on his mother, that no rent would be charged for the house, except he stated that affiant would be expected to pay rent for the place the same as he had been paying, that is to say, that affiant would pay him the

third and fourth of what he made, but that Clyde would not be expected to pay anything; and he stated to affiant that it. was impossible for him and his mother to stay there together any longer unless they got somebody to stay with them, that she was getting feeble and needed waiting on, and somebody to stay with her, and he really needed somebody to help wait on him and do his cooking; and he further stated to affiant, "I have got plenty to take care of me and my mother in her lifetime, but yet I am dependent, I have got nobody to wait on her and nobody to stay with her when I am gone, and nobody to look after me; and I want to make some permanent arrangement so somebody will be in the house and wait on her when she is sick, and wait on me when I am sick and mend my clothes and sew for me, and I want to get Clyde to come and do this for me, and at my death I will make my will and will her all of my property of every kind."'

Q. 'Wasn't that what you swore, that that was the contract; isn't that what the contract was?' A. 'I was to run a crop, but he didn't make that contract with her; he made it with me.' Q. 'Isn't that the contract he made with her, and didn't you swear it, and didn't your lawyer write it; aint that the contract? I ask you, didn't he make this contract? A. 'I made a contract to make crop over there.' Q. 'State whether this was the contract or not—you swore once. Tell the jury whether that was the contract or not.' A. 'I made a contract to make a crop.' Q. 'Was that all the contract was made?' A. 'Yes, sir, to make a crop, all that I made.' Q. 'Was this the contract he made with your wife? Tell me whether this is the contract?' A. 'He told me she was to do the cooking, wait on his mother.' Q. 'How were all the provisions to be furnished at the house to support the family?' A. 'I was to furnish half.' Q. 'You were to furnish half of the provisions and Mr. Brown was to furnish the other half?' A. 'Yes, sir.' Q. 'That was in it?' A. 'Yes, sir.' Q. 'That was a part of the contract, wasn't it?' A. 'Yes, sir.' Q. 'Another part of the contract was that Mrs. Rivers was to wait on his mother?' A. 'Yes, sir.' Q. 'And another part of the contract was that she was to wait on him?' A. 'Yes, sir.' Q. 'And another part of the contract was that she was to do the cooking, wasn't it?' A. 'Yes, sir.' Q. 'And another thing, she was to keep the house?' A. 'Yes, sir.' Q. 'Well, let us see if we can't

find just exactly what this contract was; what was he to do on his part? He was to fix up the house?' A. 'Yes, sir.' Q. 'You were to help him?' A. 'I did help him.' Q. 'And you agreed to do it?' A. 'Yes, sir.' Q. 'He went to see you?' A. 'Yes, sir.' Q. 'You agreed to go and help him cut stock?' A. 'Yes, sir.' Q. 'And another thing was, he was not to be at any expense in the housekeeping except to furnish one half of the provisions, that was all. You were not to charge him any board. You were to furnish the other half, wasn't you?' A. 'Yes, sir.' Q. 'You did furnish half of the provisions, approximately one half, and he furnished the other half, didn't he?' A. 'I furnished over half, I think. One year he didn't kill a hog. I furnished the meat for the whole year.' Q. 'So you did more than you agreed to do?' A. 'Yes, I did that year.' Q. 'Another thing, you were not paying any rent for the house you lived in?' A. 'No, sir.' Q. 'That was a part of the agreement wasn't it?' A. 'Wasn't anything said about house rent; I don't think there was; there might have been.' Q. 'Didn't you expressly say it, didn't you swear it, that you were not to pay any rent for the house, but all you were to pay was to pay your third and fourth for the crop?' A. 'Yes, sir, I was to pay the third and fourth.' Q. 'You didn't pay any rent did you?' A. 'No, sir.' Q. 'And wasn't that part of the agreement?' A. 'It might have been; I don't remember now.' Q. 'You have not any very clear recollection of what the contract was, have you?' A. 'Why he might have said that he was not going to charge any rent for the house.' Q. 'Didn't he expressly say so? You didn't pay any. That was a big item, adding four or five or six rooms to the house; wasn't that expressly understood, that you were not going to pay any rent for that house, and you would not have gone there unless you had had that contract?' A. 'People don't rent houses when they farm, that is, pay extra rent for the house.' Q. 'That is what you contracted to do, to work down there on a farm?' A. 'Yes, sir.' 'Well now, do you think you understand the contract? aint it a good deal more than you swore it was awhile ago?' A. 'Well, I didn't say that was all.' Q. 'I asked you if that was all, and you said that was all you could remember. You can remember a great deal more now?' At the conclusion of the testimony of this witness, Urma Rivers, the husband of the plaintiff, and the above-quoted testimony in regard to

the alleged contract and all he testified to touching the making of said contract, both on the direct and cross-examination, in which recital is given of both the questions and answers, the defendant moved the court to exclude all this evidence of the said witness, Urma Rivers, from the consideration of the jury, because he was a party to this contract, and, this suit being defended by the administratrix of L. A. Brown, that he is an incompetent witness under our law; which motion the court refused to grant, saying: 'Taking the testimony all together, there was other testimony than that of Mr. Rivers as to the separate contract between Mrs. Rivers and Mr. Brown, the dead man, with the consent of Mr. Rivers; and taking all the testimony together as it appears in the record, this motion is overruled.' The defendant contends that the court erred in overruling said motion to exclude said testimony, for the reason assigned in said motion, to wit, that L. A. Brown being dead, and the suit being defended by his administratrix, the said witness, Urma Rivers, the husband of the plaintiff, by the said testimony delivered by himself, clearly shows he was a party to said contract, and, being a party thereto, under the law he was incompetent as a witness to establish by his testimony the contract sued on, when the other party thereto, viz., L. A. Brown, was dead, and his administratrix was defending said suit. The defendant says the fact, if it be a fact (which the defendant says is not a fact), that 'there was other testimony than that of Mr. Rivers as to the separate contract between Mrs. Rivers and Mr. Brown, the dead man, with the consent of Mr. Rivers, and taking all the testimony together as it appears from the record,' did not in any way have the effect of rendering him competent to testify, if he was a party to the contract with the dead man, intestate of the defendant administratrix."

The court did not err in refusing to exclude the testimony of this witness on the grounds urged. He was not a party to the suit and was not a party to the contract sued upon. Intermingled with his testimony regarding the contract sued upon, and connected with that contract, is evidence of what might be called a collateral undertaking upon the part of the husband of the petitioner. This did not render him incompetent as a witness.

8. The testimony of the physician attendant upon the decedent in his last illness, tending to show that he then desired to make

a will in favor of the petitioner in the case, was competent, relevant, and material, and the court did not err in admitting it over objection.

9. Under the charge of the court the jury returned a verdict in favor of the petitioner, the verdict being in the following language: "We, the jury, find for the plaintiff on all the issues in this case." The court thereupon rendered its judgment decreeing that the plaintiff recover from the defendant all the estate of L. A. Brown which had come into the hands of the defendant, Mrs. Landrum, as the administratrix of the estate of the decedent, or which might come into her hands as such administratrix, less such costs as might be taxed in the case. The court further decreed that title to the realty constituting a part of the estate be in the plaintiff as against the defendant and the estate of the decedent. It was further decreed, that the personal property belonging to the estate of the decedent which had not been sold be turned over to the plaintiff; that the defendant make a deed conveying the realty described in the decree to the plaintiff, this being the realty which constituted a part of the estate of the decedent; that the proceeds of the sale of any of the property of the estate, and any other money that might come into the hands of the defendant as a part of the estate of the decedent, be delivered to the clerk of the superior court of Campbell county; that if the defendant had paid any debt of the decedent, which was a just claim against the estate, she deliver to the clerk of the court the receipts, canceled notes, or other evidence of the payment of any money on account of such estate, and that if these claims were just, they be taken and held in lieu of any money which she would have to pay over had those claims not been paid. It was further decreed, that the administratrix should keep and retain nothing on account of any services she had rendered, or should thereafter render, as administratrix of the estate, or for any money she had paid or agreed to pay out to any person as administratrix or otherwise, except such money as had been paid out on obligations due by L. A. Brown at the date of his death; and that she make a statement to the court, verifying the same by oath, showing just what money she had received, and from what source, and how it had been distributed, and to whom, and paying over to the clerk of the court the balance in her hands. The decree further makes provision for the

payment of all debts of the decedent at the date of his death, payment of costs in certain cases, payment of the cost of carrying this case to the Supreme Court on a previous writ of error; for the presentation of all claims against the estate of the decedent by intervention or otherwise; also, that the counsel who filed the suit shall be a tenant in common with the plaintiff, having one fourth interest in the property (this latter provision being to secure the fee of counsel); and that plaintiff shall be liable for all the just claims of the decedent. Numerous exceptions to this decree were filed, on the ground that it does not follow the verdict, and was not authorized thereby, specifying wherein it was not authorized. Also a motion to set aside this decree was made. The exceptions and the motion were overruled. We are of the opinion that the court properly so ruled. We have set forth above the substance of the decree. The jury had been instructed that they should return a general verdict; and that if they found in favor of the plaintiff on all the issues of the case, their verdict should so state. Under this charge the jury returned a verdict finding in favor of the plaintiff "on all the issues in the case." And when we consider the scope of the pleadings, the issues involved, it is apparent that the verdict, properly construed, authorized the decree rendered. When this suit was instituted in 1915 the defendant in error had not been granted permanent letters of administration, but was temporary administratrix. Subsequently to the filing of the suit permanent letters of administration were granted. The effect of the verdict and decree was to put the title to this property in the plaintiff. The meaning of the verdict and the decree in the case is, that there is specific performance of a contract on the part of the decedent to leave by his will all of his property to the plaintiff in the case. Had this contract been carried out, the plaintiff would have had title to the property from the date of the death of the intestate; and we do not think it should be taxed with the cost of the administration and the litigation which had been carried on by the defendant, who was the sole heir at law of L. A. Brown. It is cogently argued in the briefs of counsel for plaintiff in error that she was entitled to this cost and compensation, and also reasonable counsel fees for the attorneys at law who represented her in this litigation. We can not agree with this contention. Mrs. Landrum was, as said above, the sole heir of the decedent, and

she was as an individual made a party defendant in the original petition. She was stricken from the cause as an individual, and the case proceeded against her as administratrix. The claims of creditors of the estate were not in jeopardy. The estate was apparently worth several times the amount of any valid claims against it. The great bulk of the estate would not have been touched by debts. The proceeds of a small quantity of personalty and of an insurance policy on the life of the decedent were sufficient to pay off the debts of the estate. While nominally the litigation was in behalf of Mrs. Landrum as administratrix, the contest upon her part was actually carried on in protection of her personal interest. Her loss or her gain was to be the result of the suit. And the property involved, which under the decree for specific performance became the property of the defendant, cannot be taxed with any fee payable to the counsel for Mrs. Landrum. In the case of *Belt* v. *Lazenby*, 126 *Ga.* 767 (56 S. E. 81), it was said: "An agreement to devise, if founded upon sufficient consideration, is, after death of the party who agreed to devise, enforceable against his sole heir at law, by treating the heir as a trustee and compelling him to convey the property in accordance with the contract; and where the agreement is entire and embraces both real and personal property, and the estate of the decedent is unrepresented and owes no debts, and the heir is in possession of all of such property, it is not necessary, in order to enforce the contract in its entirety, to have an administrator for such estate appointed and made a party defendant to the suit. In such a case, equity, having obtained jurisdiction over the subject-matter and over the heir for the purpose of enforcing the contract as to the land against him, may enforce the whole of the contract against him." The issues which were made in this case could have been fought out between Mrs. Landrum as an individual and Mrs. Rivers. Each is responsible according to the contract for the fees of their own counsel. That the fee for the counsel for Mrs. Rivers was provided for in the decree is not a matter of which the plaintiff in error can complain.

                      *Judgment affirmed. All the Justices concur.*