HARRIS, executor, *v.* GANO & JENNINGS (two cases).
GANO & JENNINGS *v.* HARRIS, executor.

1. Where two cases between the same parties are consolidated merely for the purposes of trial, and separate verdicts are returned against the losing party, who thereupon makes in each case an independent motion for a new trial, the proper practice, in the event both of his motions are overruled and he desires to except to the judgments thereon, is to sue out separate writs of error.

When this course is pursued, the prevailing party in the trial court can not, by a single cross-bill of exceptions, bring under review in this court such rulings in the two cases as were adverse to him.

2. So far as the present litigation is concerned, the evidence warranted the findings of the jury in favor of the prevailing party below, and there was no error of commission or of omission by the trial judge, of which the losing party could justly complain.

Argued March 19, — Decided April 8, 1903.

Complaint.    Before Judge Felton.    Houston superior court. August 1, 1902.

*Louis L. Brown* and *Bacon, Miller & Brunson*, for plaintiff.
*Hardeman & Moore*, for defendants.

SIMMONS, C. J.   On July 3, 1896, W. H. Harris, as executor under the will of H. C. Harris, entered into a written contract with Gano &. Jennings, which embraced, among other stipulations, the following:   That firm was to be allowed to place its sawmill on a plantation comprising a portion of the estate represented by Harris, and to "cut therefrom all the timber available for lumber, except pine."   This timber was to be sawed into lumber, at the expense of Gano & Jennings, "according to the specifications furnished by Harris, and to be stacked on sticks on the yard in such manner as" he might direct.   "On 1st Wednesday in each month, Harris" was to "inspect the lumber sawed during the preceding calendar month, and pay" Gano & Jennings in cash, as per a schedule of prices agreed on, for all the lumber so sawn which came up to the specifications furnished.   The lumber which did not meet these specifications was to "be divided equally, Harris taking one half, and Gano & Jennings taking one half as their full pay for sawing it and piling it in two separate piles."   Harris was to keep that firm "supplied with specifications for sawing full time, not exceeding 200,000 feet per month;" and in the event he should fail, on application, to furnish such specifications, the partnership was to be privileged to "saw the timber into merchantable lumber of customary sizes." Gano & Jennings, on the other hand, agreed "to cut the timber, haul the logs, and . . saw all the timber on the place available for lumber, except pine," according to the specifications furnished by Harris, and at the prices agreed on, averaging "sawing not under 100 M feet per month;" provided, that any "providential occurrence interfering with the operation of the mill" should relieve Gano & Jennings, to the extent of such interference, from this

" obligation of averaging 100 M feet of lumber per month." In pursuance of this agreement, Gano & Jennings proceeded to erect a sawmill on the tract of timber above referred to, and commenced sawing some time in August, 1896.    Operations were continued from that time up to the summer of 1898, when they were suspended by mutual assent of the parties.    In March, 1899, Harris, as executor, instituted against Gano & Jennings two suits, one being an action for damages predicated upon an alleged breach of the contract, and the other being a suit upon an open account for the sum of $3,465.55, with interest thereon.    In defense to the first of these suits Gano & Jennings filed an answer, in which denial was made of all the material allegations of the plaintiff's petition, and in which that firm set up a counter-claim for damages by way of recoupment. In answer to the suit on the account, Gano & Jennings denied all indebtedness to the plaintiff, and also filed a special plea in which it was alleged that the plaintiff was indebted to the partnership in the sum of $602.60 for lumber sawn for the plaintiff during the months of September, October, and November, 1897, and never paid for.    When these cases were called in the superior court, they were, by consent of the parties, consolidated for the purposes of trial, and a separate verdict was returned in each.    The losing party, Harris, duly filed separate motions for a new trial, neither of which was granted; and he thereupon brought both cases to this court for review upon separate writs of error.    Gano & Jennings filed a crossbill of exceptions, designed to cover both cases, in which complaint was made of various rulings adverse to that firm.

1.  On the hearing before this court, counsel for Gano & Jennings took the position that, as the two' cases were consolidated and tried together in the court below, Harris should have made but a single motion for a new trial; and that as he failed to pursue this course, but filed an independent motion in each case, and sued out separate writs of error in each, this court was without jurisdiction in the premises.    This position is wholly untenable, as will appear from what has been heretofore said by this court with reference to the practice to be followed when two or more cases are consolidated merely for the purposes of trial, separate verdicts being returned in each.    See *Western Assurance Co.* v. *Way,* 98 *Ga.* 746; *Dickey* v. *State,* 101 *Ga.* 572; *Erwin* v. *Ennis,* 104 *Ga.* 861; *Walker* v. *Conn,* 112 *Ga.* 314; *Wells* v. *Coker Banking Co.,* 113

*Ga.* 857; *Purvis* v. *Ferst*, 114 *Ga.* 689.    Accordingly, we decline to dismiss the bills of exceptions sued out by Harris, and hold that this court is without jurisdiction to entertain the cross-bill, as it applies to and was intended to cover both of the cases tried in the court below.

2. In support of his claim for damages, the plaintiff offered evidence tending to show that Gano & Jennings did not have suitable machinery for sawing hardwood timber, and employed an incompetent sawyer, with the result that much of the timber sawed was ruined and wasted; that the lumber produced was not sawed according to the specifications furnished, and was therefore unfit for market; and that no attempt at all was made by Gano & Jennings to saw certain bills of lumber for which the plaintiff had procured orders and which he had turned over to the firm to fill under the terms of the contract between them.    The items of damage sought to be recovered consisted, (1) of loss of profits on various orders for lumber, received by the plaintiff but which he was unable to fill, for the reasons just mentioned; (2) of expenses to which the plaintiff was put because of the failure of Gano & Jennings to stack the lumber in two separate piles; and (3) of loss incurred by reason of increase in general expenses caused by delay in sawing and failure to produce an average of 100,000 feet of lumber per month.    This alleged increase in general expenses was brought about, the plaintiff insisted, by Gano and Jennings consuming twelve months time in sawing lumber which, under the contract, should have been sawed in six months time, with the result that he was compelled to keep men and teams at the mill during the entire period of twelve months, in order to handle the lumber and attend to its shipment, although they could not be constantly and profitably employed during the whole of that time.    The evidence offered in behalf of the defendant partnership tended to show full compliance on its part with all its obligations under the contract, both as to selecting suitable timber with which to fill special orders, and as to sawing the same, so far as practicable, into lumber of the kind called for by the specifications furnished by the plaintiff; and that the only reason why all the orders for lumber received by him had not been filled, and an average of 100,000 feet of lumber sawn per month, was that there was not, on the entire tract of land, timber of sufficient size, quantity, and quality out of which to saw the

lumber called for by such of the bills of lumber furnished by the plaintiff as had not been duly sawed according to specifications.

His honor of the trial bench fully and fairly submitted to the jury the contentions of the respective parties with regard to whether Gano & Jennings had, or had not, complied with the contract as to sawing according to specifications all the bills for lumber furnished by the plaintiff which could have been filled out of the timber growing on the tract of land belonging to the estate he represented.     Complaint is made that his honor did not, however, specially direct the attention of the jury to the item of damage which the plaintiff claimed he had sustained by reason of being forced to keep at the mill men and teams during a period of twelve months, when, as he contended, all the sawing done during that period might have been done within six months, if the mill had been properly managed and the timber carefully selected and sawed without waste.     Doubtless the plaintiff would have been entitled to recover this item of damage, had the jury found in his favor upon the main issue in controversy, viz., whether or not Gano & Jennings had committed a breach of the contract by failing to saw, according to specifications, the bills of lumber furnished by the plaintiff.     However, as the jury found against him upon this issue, and their finding was fully warranted by the evidence, the failure of the judge to call their attention to this particular item of the damages claimed affords no reason for setting aside their verdict.

It appeared on the trial that Harris never undertook, as provided for in the contract, to inspect, on the first Wednesday in each month, all lumber sawed during the preceding calendar month. On the contrary, the evidence discloses that he found it impracticable to do so, and that he made no effort to carry out this stipulation of the contract, but went to the piles of lumber from time to time and took therefrom such pieces as he needed in order to fill special orders.     The defendants introduced testimony to the effect that the lumber sawed was properly stacked according to contract; that, without attempting to inspect it with a view to rejecting such of it as failed to come up to specifications, the plaintiff and the men in his service went to the piles in order to get pieces of lumber of certain dimensions which they needed from time to time, throwing to one side all pieces of other dimensions; that boards thus thrown off the piles were often split and rendered worthless; that

none of this lumber was ever restacked, but was left on the ground in a confused heap, exposed to the weather, where it became stained and warped; and that, in consequence, a considerable portion of the lumber sawed in accordance with the specifications furnished was rendered unmarketable and of little or no value. In charging the jury upon this branch of the defense, his honor told them that if they believed it was sustained by the evidence introduced in support of the same, they would not be warranted in allowing the plaintiff damages for any loss thus brought about by his own action. It is insisted by counsel for the plaintiff that the court erred in not also instructing the jury, in this connection, "that, under the expressed terms of the contract," Harris "had a right to tear down the stacks of lumber for the purpose of inspecting the same, and that by the terms of the contract" the firm of Gano & Jennings was under a duty "to then restack said lumber into two separate piles for division between the parties." The reply to this contention is, that the evidence did not warrant any such instruction, and to have given any charge on the line suggested would have served only to confuse the jury. As stated above, the testimony showed that Harris never undertook to inspect the lumber and reject such part of it as did not meet the specifications furnished by him; so the defendant partnership was under no duty to restack any portion of the lumber, to the end that it might be equally divided according to the terms of the contract. This being true, the sole question for determination by the jury was whether or not, in point of fact, as claimed by Gano & Jennings but denied by Harris, the men in his employ did tear up the piles of lumber in order to get pieces of certain dimensions, throwing such pieces as were not immediately wanted on the ground, and there allowing them to remain until they became damaged and unfit for market.

As to the plaintiff's claim which was based on the open account sued on, the issue presented was whether or not he had made monthly advances to Gano & Jennings in order to enable that firm to prosecute the business, or had, by way of final settlement, without inspection or measurement of the lumber sawn during each month, accepted as correct the charges for sawing made by Gano & Jennings and paid the same in full without objection or complaint. With respect to this issue the evidence was conflicting, and the trial judge, in charging thereon, instructed the jury that if

Harris failed to inspect the lumber as provided for in the contract, paid the bills for sawing, when presented at the end of each month, without question or complaint, and, "after paying such bills, treated the lumber as his own and had it shipped or resawed, or otherwise appropriated it to his own use," then he "would be estopped from afterwards claiming that the money so paid on the bills was an advance, and not a payment." There is no complaint on the part of Harris that this charge was not fully warranted by the evidence, but he does insist that it was erroneous in that it, "in effect, confined the jury to determining only whether the lumber was properly sawed, and wholly excluded from their consideration the question as to whether the defendants actually furnished to Harris the amount of lumber called for by said bills," which question the court nowhere else in the charge submitted to the jury. We find, on examination of the entire charge of the court, which appears in the record before us, that immediately after instructing the jury as just indicated, the court further charged them as follows: " On the other hand, I charge you this to be true: If, by agreement between the parties, when, at the end of each month, the bills were presented by Gano & Jennings to Harris, Harris not being able at the time to inspect the lumber for any reason whatever, and by agreement made then between him and Gano & Jennings he advanced to them an amount of money which represented the amount of money due to them for the lumber sawed during the month, and there was an agreement between Harris and Gano & Jennings that inspection should be delayed until subsequent time, and that the payments were to be tentative, — that is to say, were not to be in full and final settlement for each month's bill, but was to be treated merely as an advance to them, and settlement and calculation as to the amount due to be had later, — then that would not be such a settlement between the parties as to prevent Harris from setting up later, should it turn out [that] he had paid more than was due to Gano & Jennings." This charge, it would seem, left the jury entirely at liberty to consider, not only whether Harris received the kind of lumber for which he had contracted to pay, but also whether he actually received the amount of lumber for the sawing of which he was charged in the bills presented to him by Gano & Jennings. Be this as it may, however, there is no merit in the attack made upon the charge excepted to, conceding that it did

limit the jury to a consideration of the question whether or not Harris, by failing to inspect the lumber and appropriating it to his own use, waived all defects therein, caused by improper sawing or otherwise.　While testifying as a witness in his own behalf, Harris did undertake to say the account sued on was correct, and that he had therein credited Gano & Jennings with all the lumber which had been sawed during the months covered thereby.　But upon cross-examination he admitted he had never, in point of fact, actually measured all of the lumber which had been sawed and stacked by Gano & Jennings, saying, in this connection: "There was not this much lumber there; I know that from my frequent visits there.　I measured the lumber to see whether it was there.　I measured all that I got.　I never measured Jennings' half of the rejected.　I don't know whether he sawed the amount of lumber represented by those papers or not.　I never saw that much there.　I did not guess at all; I did not measure it; but you can judge of the quantity of lumber without measuring each piece.　I measured all that I got; and my estimate — that was merely my judgment.　Mr. Jennings did not try to get me there to inspect this lumber represented by these bills.　I went several times to inspect it, but I could not do it."　Granting that this testimony would warrant the conclusion that the bills rendered by Gano & Jennings did not correctly state the amount of lumber actually sawed, it certainly afforded no basis upon which the jury could estimate the precise amount of lumber sawed during any particular month or other definite period.　True, Harris stated the number of feet of different kinds of lumber which he admitted he actually got, but it conclusively appears from his testimony, considered as a whole, that in referring to the amount of lumber he "got," he meant such lumber as he hauled away from the yard, shipped, and sold, and not to all the lumber which had been stacked in the yard during the period covered by the bills for sawing, presented for payment by Gano & Jennings.

The jury found that the plaintiff's claim that he had overpaid that firm was not well founded, and, further, that he was due to it $352, upon a just and fair accounting between them.　We are not prepared to hold that this finding of the jury was without evidence to support it, although there was evidence which might well have warranted a different conclusion.

*Judgment in each case affirmed, as to main bill of exceptions; cross-bill of exceptions dismissed.　By five Justices.*