### JEFFERS *v.* THE STATE.

1. While the court's charge upon the subject of impeachment of witnesses was not entirely accurate, the inaccuracy was not of such character as to require the grant of a new trial.

2. The exceptions to that portion of the court's charge instructing the jury that if the testimony showed clearly that the defendant had committed the offense charged, and the jury should so find beyond a reasonable doubt, the jury would be authorized to convict, "although good character may have been established," are without merit.

3. A ground of a motion for a new trial, complaining that the verdict is contrary to certain specified portions of the charge, means merely that the verdict is contrary to law, and raises no question for decision not raised by the general assignment of error that the verdict is contrary to law.

4. A medical expert, after examination of a child, could given his opinion as to the state of her mental development.

5. A ground of the motion for a new trial, containing an exception to a ruling of the court refusing a motion of defendant's counsel to rule out of evidence "what occurred about the defendant's character since this case has begun," without showing what evidence had been introduced as to defendant's character at the time the motion was made, shows no error on the part of the court.

6. This court will not undertake to pass upon exceptions to rulings of the court upon the admissibility of evidence, when in the grounds of the motion for a new trial presenting the exceptions the movant complains generally of the court's rulings, and such grounds consist of numerous questions and the answers thereto, interspersed with colloquies between the court and counsel, some of the answers being admissible, some not, and still others being entirely immaterial.

7. The evidence authorized the verdict.

APRIL 12, 1916.

Indictment for rape. Before Judge Bartlett. Douglas superior court. January 12, 1916.

F. W. Jeffers was tried upon an indictment charging him with the offense of rape; for that he did have carnal knowledge of Bessie Cook, forcibly and against her will. She was about 13 years old, had been an inmate of the Orphans' Home at Decatur, Ga., and had been taken to the home of the accused by permission of the authorities at the orphanage. She testified that the defendant said, at the time of taking her to his home, that he wanted a child to help his wife in the house. She remained with the defendant almost a year; had been an inmate of the Orphans' Home for six or seven years. She further testified that she was taken into a field about a mile from the house, where she was put to work; and that once, in a part of the defendant's farm designated as "the bottoms," and again, in a part referred to as the new ground, the defendant assaulted her. Before making the assault he had asked her consent, which she refused. He used force, and she resisted and struggled until she was overcome. She was a small, weak girl; and he was a large, strong man. She did not tell any one about this, because she was afraid to do so; he had threatened to whip her within an inch of her life if she did tell; she was a stranger in the neighborhood and had no friends there. She had never told anybody, at the time she was carried before the grand jury, of the defendant's crime. In another part of her testimony she stated that she had told Mrs. Hawkins, the wife of the superintendent of the Orphans' Home, before she came before the grand jury.

W. S. Ansley, a practicing physician of 15 or 16 years experience, testified that he was called upon to examine Bessie Cook. He made a physical examination of the vagina. This was some time after she had been before the grand jury the first time. He found that the hymen had been ruptured, and that she was not a virgin. Sexual intercourse would cause the hymen to be broken. When he examined her she was about the age of puberty, just in the midst of a change from girlhood to womanhood. Relatively to her mental condition he testified that she was below the average, and that he considered her a child. He further testified that the rupture of the hymen might have resulted from numerous causes, and that possibly there are girls that never had a hymen.

J. S. Davidson, for the State, testified that he had a talk with Jeffers about the girl about two weeks after the girl went to defendant's house. Jeffers said that he wanted advice of the witness, and asked him what he thought about sending the girl back. As he remembered, Jeffers said she was 13 years old, going on 14, "and that he had studied the matter over, and a girl of that age, if she got mad at him, he thought she might tell something; and asked me if I thought people would believe it if she did. I told him I thought they would; and he said the girl was all right, he had tried her—pinched her, and I believe he said goosed her, or something, and he thought she was all right; she seemed to hate him worse than the devil, but liked his wife all right. He said he didn't think there was anything wrong with the girl, but he meant to find out if he kept her. He said if she was to get mad and go off and tell anything among the neighbors, if I thought they would believe it; and I told him I did. It was before he was charged with this crime. Just two weeks after he had got the girl." On cross-examination it appeared that the case had been previously tried, and that the witness had been on the stand and had not testified as to the conversation just related; the witness saying that on the first occasion he was called upon to testify upon the question of character alone, and at that time did not say anything about the conversation with Jeffers; he was not asked about it, and did not tell it until he was asked about it in court.

One Foster, for the State, testified that he had a talk with Jeffers before he carried the girl back to the Orphans' Home. Jeffers "went on to say that he had bought her a new pair of shoes, and as he had to carry her back he wasn't going to let her have them. He said she told him she was sick; and I think he said he asked her what was the matter, and she told him she was unwell. He didn't say, he just said he wanted to satisfy himself, and he looked in the chamber and found clots of blood. He said she was dropping it on the floor, and he made her put on a pair of drawers or something. He did not say anything else. He did not give any reasons about why they had written for him to bring her back; I don't think he did. . . I don't think he said positively what she would claim. He said she might claim that he had had something to do with her, or something of that kind. I don't remember anything else he said. That was before he was charged

with this crime; that was before he carried her back." The witness further testified to other and somewhat similar conversations.

Evidence was introduced by the defendant to show contradictory statements on the part of the girl, as to his ever having committed the offense of rape upon her, or as to his ever having carnal knowledge of her. The jury returned a verdict of guilty, and the defendant's motion for a new trial was overruled.

*J. S. James* and *J. H. McLarty,* for plaintiff in error.

*Clifford Walker,* attorney-general, *J. R. Hutcheson,* solicitor-general, and *Mark Bolding,* contra.

BECK, J. (After stating the foregoing facts.)

1. Error is assigned upon the following charge of the court: "So it is for you to determine, from the testimony submitted on the trial of this case, what credit should be given the attacking evidence, also what credit should be given the evidence attacked; that is, provided any evidence has been attacked. It is for you to say whether any witness or witnesses have sworn falsely in this case; if so, you should disregard their testimony entirely, unless, as before stated, it is corroborated by circumstances or other unimpeached testimony in the case." This charge is criticised upon the ground that "it left the impression on the jury's mind that there was no testimony in the case attacking the credibility of the witness Bessie Cook;" that it did not state "what corroborating evidence or circumstances by other impeached testimony would be sufficient;" and that the court "should have charged that the corroborating testimony or circumstances unimpeached witnesses should relate to the material part of the witnesses' testimony upon which a verdict could be based for his conviction, that is, the testimony must corroborate Bessie Cook's testimony on the subject of defendant's raping her." While the charge complained of is not entirely accurate, we do not think that the inaccuracies are sufficiently material to constitute grounds for the grant of a new trial. It is true that where a witness has been impeached, that is, where it is shown to the satisfaction of the jury that a witness has knowingly and falsely testified in a material particular, his testimony should be disregarded entirely, unless corroborated by circumstances of a material character or by other unimpeached evidence; and, as said above, this rule is not stated with entire accuracy in the charge under review. But the variance in the court's charge

from the proper instruction upon this subject is not of such a character as to constitute reversible error. Park's Code, § 5884, and cases cited thereunder.

2. Upon the trial of one charged with a crime, all the evidence upon the subject of character may be to the effect that the character of the defendant is good, and thus the term "good character" as ordinarily employed may be established; nevertheless, if there is sufficient evidence to show beyond a reasonable doubt that the particular crime charged was committed by the defendant, and the jury so find, and the trial judge approves the finding, this court will not set aside the verdict.

3. A ground of a motion for a new trial complaining that the verdict is contrary to certain specified portions of the charge means merely that the verdict is contrary to law, and raises no question for decision not raised by the general assignment of error that the verdict is contrary to law.

4. A medical expert, after examination of a female child, could give his opinion as to the state of her mental development, and could testify that he considered the person referred to "a child," and that her development was "considerably below the average."

5, 6. The rulings in headnotes 5 and 6 require no elaboration.

7. The evidence was sufficient to authorize the verdict. The testimony of the girl alleged to have been assaulted was direct as to the commission of the crime by defendant, and it can not be said that there was no corroborating evidence.

*Judgment affirmed. All the Justices concur.*