ELLIS, administrator, *et al. v.* REAGAN *et al.*

No. 7898.   FEBRUARY 12, 1931.

*H. B. Moss* and *Hewitt W. Chambers,* for plaintiffs in error.

*T. J. Lewis,* contra.

HILL, J.    Thomas Reagan and his wife, Mary Reagan, brought suit against Frampton E. Ellis as administrator of the estate of J. J. Neese, deceased, and his heirs at law, to compel specific performance of a parol contract alleged to have been entered into between J. J. Neese in his lifetime with the plaintiffs, whereby, on consideration that the plaintiffs would move into the home of deceased located at 776 Curran Street, Atlanta, Georgia, and take care of him as long as he lived, he promised that he would make his will and leave his house and lot on Curran Street to them as compensation therefor.    It is alleged that in pursuance of the agreement the plaintiffs did move into the house; that J. J. Neese occupied one room in the house, and was waited upon during the remainder of his life until his death on December 30, 1928; that the contract was fully carried out and performed on their part by the plaintiffs, but the deceased died without having made a will; that plaintiffs made and paid for valuable improvements on the property in pursuance of the contract; that the deceased lived with plaintiffs without paying board and without their receiving any compensation for the improvements; and that the administrator was attempting to collect rent from the plaintiffs for the use of the property.    The prayers were, that the administrator of J. J. Neese be required to perform the contract made and entered into, that the house and lot be decreed to be the property of plaintiffs, and that the defendants be enjoined from interfering with plaintiffs in their use and occupancy of the property.    The answer denied that there was any such agreement as alleged; averred that the plaintiffs were in possession of the property merely as tenants; and asked for judgment for rent.    The jury returned a verdict in favor of the plaintiffs.    A motion for new trial was overruled, and defendants excepted.

■    In order to entitle one to specific performance of a parol contract to convey land upon a valuable consideration, the contract must be proved so clearly and satisfactorily as to leave no reasonable doubt on the minds of the jury as to what the contract was, and it must appear that it was performed on the part of the plaintiffs, and was not performed on the part of the defendant. *Bird* v. *Trapnell,* 149 *Ga.* 767 (102 S. E. 131) ; *Tidwell* v. *Garrick,* 149

*Ga.* 290 (2 *a*) (99 S. E. 872) ; *Heery* v. *Heery,* 144 *Ga.* 467 (87 S. E. 472) ; *Landrum* v. *Rivers,* 148 *Ga.* 774 (98 S. E. 477) ; *Gordon* v. *Spellman,* 145 *Ga.* 682 (89 S. E. 749, Ann. Cas. 1918A, 852) ; *Banks* v. *Howard,* 117 *Ga.* 94 (43 S. E. 438) ; *Poullain* v. *Poullain,* 76 *Ga.* 420 (2) (4 S. E. 92). In the motion for new trial the defendants insist that the verdict is contrary to the evidence and without evidence to support it. If this be true, a new trial should have been granted. The plaintiffs offered a number of witnesses to prove their case. The testimony of Mrs. Mary A. Neese was in part as follows: "He [J. J. Neese] said he would give them this house on Curran Street if they would move over there and let him live with them. He wanted one room. They told him he could have it. Regarding what he said about giving it to them—he said he would will it to them and make them a will to that house. As to what Mr. Reagan and Mrs. Reagan were to do—they were to see after him, wait on him when he was sick and needed attention. He wanted them to wait on him. He said his wife was dead and he had no children and he wanted to come to them and live with them. Some time after that conversation Mr. Reagan and Mrs. Reagan and Mr. Neese and I moved over on Curran Street. Mr. Neese stayed over there on North Avenue with them for three weeks, I reckon, before we all moved to Curran Street, after that conversation. It was two or three weeks. He was sick during that time. Mary and Tom waited on him during that time. After we moved over on Curran Street his health was bad. Dr. Mizell and Dr. Waters waited on him all the time. Tom Reagan gave him his medicine and built fires for him. He continued to do that up until he died. I stayed at the house all along. I didn't work anywhere. Mr. Neese occupied the east room on Curran Street. That was one of the front rooms in the house. While he was there he ate at our table all the time, except when Johnny Christopher came. Johnny Christopher stayed three weeks. Mr. Neese hired him as chauffeur. John cooked for him those three weeks. I cooked some for him. Mrs. Reagan cooked for him when she was there. John Christopher cooked his own food. He did not eat with us at that time. I did not see Reagan or my daughter pay Neese any rent during the time he was there. Mr. Neese never paid my daughter or Mr. Reagan anything for board or anything else while he was there. Mr. Neese died the 30th day of December, 1928. Mr. Neese

discussed his property after we moved over into this house. He was always talking about his property and what he was going to do and who he would give it to, that he would give it to Mary and Tom if they would take care of him. He told them he would give the house to them, and if they wanted it fixed to fix it themselves. Mr. Reagan made repairs to that house. He fixed some of it. He fixed the roof and the water system and floor and the fence. He had the fence built."

D. P. Stewart testified: "He told me he had come from Philadelphia and wanted a home and did not have any children except two stepchildren, and he wanted a home and had come and was going to give Mr. and Mrs. Reagan his house on Curran Street if they would move there and live with him and give him one room, that he was going to leave them the house and lot on Curran Street. I saw Mr. Neese several times after that conversation. I went to see him several times while he was sick before they moved. After they moved I went to see him there. He was living on Curran Street at that time. As to how long he had been living there—they moved there the latter part of June, if I am not mistaken, and he died in December. He was a sickly man. Mr. and Mrs. Reagan waited on him and looked after him around the house. Mrs. Reagan worked a lot of the time." J. C. Harris testified: "He [Neese] told Mr. and Mrs. Reagan that if they would live on Curran Street with him and give him a room and take care of him the rest of his life, at his death he would will them this property. He asked Mrs. Reagan had she decided what she was going to do. She told him she had. She said, 'Well, I want you to live up to your contract.' He said, 'All right.' He asked her if she was going to live up to hers, and she asked him would he. He says, 'Yes,' that his word was as good as his bond. After that conversation, Mr. Reagan and Mrs. Reagan and Mr. Neese moved on Curran Street. I do not know the exact date that they moved. They are living on Curran Street yet. I do not know the exact date when J. J. Neese died. He died just about a year ago. As to where he was living at the time he died—the last time I saw him he was at Mrs. Reagan at 776 Curran Street." Mrs. Maggie Branan, C. E. Croft, W. T. Bone, R. L. Whitworth, W. A. Whitfield, and Homer Martin testified to substantially the same conversations with the deceased, with reference to his agreement with

the plaintiffs, and as to their fulfilling their part of the contract.

From the foregoing testimony introduced by the plaintiffs we think that it established the parol contract between the deceased and the plaintiffs so clearly and satisfactorily as to leave no reasonable doubt on the minds of the jury as to what the contract was, and that it had been performed on the part of the plaintiffs, and was not performed on the part of the deceased at the time of his death. We are therefore of the opinion that the verdict was supported by the evidence, and that the judge did not err in overruling the general grounds of the motion for a new trial.

■ Grounds 4, 5, and 6 of the motion except to the failure of the court to charge the jury, as requested, certain principles of law, as follows: (4) "I charge you that before section 4634 of the Code (read section) would apply in the case, you are to determine, before possession with valuable improvements would entitle the plaintiffs to recover, the possession must be absolute and exclusive; that if the deceased, J. J. Neese, still retained dominion over the property or of any part of it, plaintiffs would not be in absolute possession and such possession with improvements would not entitle plaintiffs to recover. I further charge you that on the question of improvements, if any were made, it would be your duty to determine under the evidence whether such improvements are made, if made at all by the plaintiff, were for his immediate convenience or whether made as a lasting, substantial improvement. If made for the present convenience of the plaintiff, then, even if the possession were absolute, such improvements would not entitle the plaintiff to recover." (5) "Before you would determine, however, such an equitable title passed by reason of the gift so as to entitle the plaintiff to a verdict of specific performance, you must be satisfied beyond a reasonable doubt, from the evidence, that there was a gift of a specific tract of land and a delivery of that land as set out in the petition. If the evidence fails to satisfy your minds upon this, beyond a reasonable doubt, that there was a gift of a specific tract of land and a delivery of that land." (6) "Where specific performance is sought for the enforcement of the sale of land, such contract and the terms thereof should be established so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement." The refusal of these requests was not error for any reason assigned. The re-

quested instructions, where proper and applicable, were given to the jury substantially in the general charge. Certain portions of the requests to charge are argumentative and otherwise not appropriate. The general charge covered the issues in the case.

■ The judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Beck, P. J., absent for providential cause.*