McCRARY, administrator, *v.* SALMON.

No. 13588. APRIL 15, 1941. REHEARING DENIED JUNE 14, 1941.

*Barry Wright* and *Jack Rogers,* for plaintiff in error.

*Maddox & Griffin,* contra.

ATKINSON, Presiding Justice. The administrator of the estate of Mrs. Grace, deceased, advertised separately described realty and personalty to be sold on the public-sale day in June, 1935. Mrs. Salmon interposed claims to the property so advertised, and both claims were returned to the superior court and docketed by the numbers 5812 (relating to realty) and 5855 (relating to personalty). On July 17, 1936, Mrs. Salmon, in aid of the claim and in order to establish her right to the property in question, filed her "equitable petition" in the nature of an amendment, seeking to set up and compel specific performance of an alleged parol contract with Mrs. Grace, whereby the latter agreed with petitioner "that if petitioner would look after and care for and nurse and see that she was properly cared for as long as she lived, that she, Mrs. Grace, would execute a will giving to petitioner all of her property both real and personal, and money, at the death of said Mrs.

Grace." It was also alleged that Mrs. Grace left described property, other than the specific realty and personalty described in the claims, that would be within the contract; but by amendment this claim to such other property was withdrawn. Other allegations were full performance of the contract on the part of the claimant, and failure by inadvertence on the part of Mrs. Grace to make the will. The amendment contained the following prayers: "Wherefore she prays that this petition be allowed and filed, and that she have specific performance of the contract to make a will, as hereinbefore set out, as to all of the property described in said claim, and that the court by verdict and decree declare that said property is the property of the petitioner, and that the administrator be required to convey said property to her in as full a manner as held by said Mrs. Grace in her lifetime, and that she have any and all further relief consistent of law, equity and the facts of this case. . . Your petitioner shows, that this being a proceeding in equity and all the necessary parties being before this court, and the court having jurisdiction of all the parties and the subject-matter, that a decree should be entered, settling the entire estate and vesting title in petitioner to the property claimed in this claim case, and to the front [funds?] derived from the sale of the property in Anniston, Alabama, and the money on deposit in the bank, and that the court by judgment and decree require said administrator to pay over to petitioner all of said funds. And she prays that such verdict and decree be entered, and that credit be given to the administrator for any debts or claims that he may have paid for expenses of last illness, and burial expenses, and expense for recovering house."

The equitable amendment and the amendment thereto were both duly allowed. The administrator filed an answer to the equitable petition, and the answer was amended. Under the pleadings the parties were at issue as to the alleged parol contract. The case as thus presented was tried under a stipulation between the parties to try the claim cases together. There was no order of court expressly providing for consolidating the claim cases as originally docketed. The jury returned two identical verdicts "in favor of the claimant," which by instruction of the judge were entered respectively on each of the statutory claims. The administrator made two motions for a new trial, based on the general grounds. After-

wards, treating the whole proceeding as one by Mrs. Salmon for both equitable and legal relief, the administrator presented two amendments of the motion for a new trial. A new trial was refused, and the administrator took a single bill of exceptions, assigning error on the refusal of a new trial.

Fred C. Salmon testified: "Mr. Grace was carrying insurance on his life at that time. He had a three-thousand-dollar poli·y with the Royal Arcanum, fraternal insurance. . . Now at that time Mr. and Mrs. Grace came to my house, and wanted me to pay this premium on the policy on account of finances, and we went to W. H. Coker and had him send the policy in, and had it changed, and they changed it and made one thousand dollars to my wife, Mrs. Bessie Salmon, and two thousand dollars to Mrs. W. I. Grace, Aunt Mollie, and I was to pay the premiums as long as he lived, and my wife was to get a check for one thousand dollars, and she was to get the other two thousand dollars, and at their death my wife was to have the estate, whatever it ·was, in cash or anything else. My wife, to carry out her contract, was to help look after them in their old age and see they were looked after. . . At the time this agreement was made and entered into, there were present Mr. and Mrs. Grace and W. H. Coker and myself. . . Now during that period of time, from 1925 up until his death, he and his wife were still living next door to my house. When this agreement was made that I spoke of, at Mr. Walt Coker's office, Mrs. Grace said that she wanted us to look after her and her business, and said we were to look after it as long as they lived, was the contract; we were to do it. Mrs. Salmon agreed to that. Mrs. Grace, in return for Mrs. Salmon agreeing to do the things I have just outlined, was to execute a will and leave everything she had. personal and real, to my wife, Mrs. Bessie Salmon, if I carried out this contract; and we did do these things we promised to do."

The equitable amendment extended to and was in aid of both the claims, thus converting the whole proceeding into one action for specific performance as essential to recovery of all the property described in both of the original claims. The allowance of the equitable amendment was in substance mere amendatory and enlargement of the original claims, and amounted to a conversion of the whole proceeding into one action at the instance of Mrs. Salmon, the claimant. While there were two identical verdicts and two motions

for new trial on the same grounds, they were in substance the same, and amounted to no more than one verdict and one motion for a new trial in a single case as made by the claims as amended by the claimant. The administrator, being the party adversely affected, had a right to complain in a single bill of exceptions of the judgment overruling his motion for new trial. Consequently the motion in the Supreme Court to dismiss the writ of error, on the ground that there was no order of court consolidating the original claim cases, and that the plaintiff in error, on the state of the record, could not complain of the judgment refusing a new trial in a single bill of exceptions, is without merit. The case differs on its facts from *Harris* v. *Gano,* 117 *Ga.* 950 (44 S. E. 8), in which it was held: "Where two cases between the same parties are consolidated merely for the purposes of trial, and separate verdicts are returned against the losing party, who thereupon makes in each case an independent motion for a new trial, the proper practice, in the event both of his motions are overruled and he desires to except to the judgments thereon, is to sue out separate writs of error. When this course is pursued, the prevailing party in the trial court can not, by a single cross-bill of exceptions, bring under review in this court such rulings in the two cases as were adverse to him." The case differs also from *Futch* v. *Mathias,* 148 *Ga.* 558 (97 S. E. 515), and similar cases. There is no merit in the motion to dismiss the writ of error.

■ "A ground of a motion for a new trial should be complete in itself, or rendered so by an exhibit to the motion. Accordingly, it has been repeatedly ruled that a ground based on the admission or rejection of evidence presents nothing for adjudication, when such evidence is not set forth therein either literally or in substance, nor attached as an exhibit to the motion." *Shaw* v. *Jones,* 133 *Ga.* 446 (9) (66 S. E. 240). The principle applies also where the ground of a motion for a new trial complains of refusal to rule out of evidence testimony of a witness. *Jeffers* v. *State,* 145 *Ga.* 74 (5) (88 S. E. 571); *Clare* v. *Drexler,* 152 *Ga.* 419 (3) (110 S. E. 176); *Wright* v. *Thompson,* 190 *Ga.* 173 (8 S. E. 2d, 640).

■ In so far as any of the requests to charge stated correct principles of law applicable and properly adjusted to the pleadings and evidence, they were sufficiently covered by the general charge.

"Where an equitable petition is brought against the administrator and heirs at law of a decedent who is alleged in his lifetime to have entered into a parol contract with the plaintiffs (man and wife), whereby the decedent promised, upon consideration that the plaintiffs would move into his house and take care of him during his natural life, to execute his will and leave the house and lot to the plaintiffs, and a breach of the contract is alleged on the part of the decedent, and performance on the part of the plaintiffs, specific performance of the contract will be decreed, where the parol contract is established so clearly and satisfactorily by evidence as to leave no reasonable doubt on the minds of the jury as to the contract, and its performance on the part of the plaintiffs, and the breach thereof on the part of the decedent." *Ellis* v. *Reagan,* 172 *Ga.* 181 (157 S. E. 478). See *Whitehead* v. *Dillard,* 178 *Ga.* 714 (174 S. E. 244). In the instant case the contract alleged is that if Mrs. Salmon "would look after and care for and nurse" Mrs. Grace "and see that she was properly cared for as long as she lived, that she, Mrs. Grace, would execute a will giving to" Mrs. Salmon "all of her property, both real and personal, and money at the death of said Mrs. Grace." Evidence that the contract was that Mrs. Salmon "was to help look after" Mr. and Mrs. Grace "and see they were looked after;" that Mrs. Grace "said that she wanted" Mr. and Mrs. Salmon "to look after her and her business . . as long as they lived," and that "Mrs. Grace, in return for Mrs. Salmon agreeing to do the things . . just outlined, was to execute a will and leave everything she had, personal and real, to" Mrs. Salmon, does not prove the contract alleged in that degree of certainty stated in the foregoing decision. Such evidence, considered alone or in connection with other evidence as to declarations of Mrs. Grace as to her intention to leave her property to Mrs. Salmon at her death, was insufficient to support the alleged contract to make a will. On its facts the case differs from those in which the above-quoted and similar decisions were rendered, in which under application of the principle stated a different result was reached. See *Taylor* v. *Boles,* 191 *Ga.* 591 (13 S. E. 2d, 352) ; *Brogdon* v. *Hogan,* 191 *Ga.* 647 (13 S. E. 2d, 666).

*Judgment reversed. All the Justices concur.*