SALMON *v.* McCRARY, administrator.

No. 14148.   SEPTEMBER 15, 1942.

*Maddox & Griffin,* for plaintiff.

*Barry Wright, Jack Rogers,* and *Alec Harris,* for defendant.

BELL, Justice.   Certain realty and personalty were separately advertised for sale by the administrator of the estate of Mrs. Mollie O'Bryant Grace.   Mrs. Bessie Salmon filed separate claims to such realty and personalty, and in aid of her claims she filed an equitable amendment seeking to compel specific performance of an alleged parol contract with Mrs. Grace to execute a will leaving to claimant all of her property, in consideration of specified services of claimant, which she contended had been rendered.   The parol

agreement on which claimant relied, as stated in paragraph 4 of the equitable amendment, was that "Mrs. Grace contracted and agreed with petitioner, that if petitioner would look after and care for and nurse and see that she was properly cared for as long as she lived, that she, Mrs. Grace, would execute a will giving to petitioner all of her property, both real and personal, and money, at the death of said Mrs. Grace." The administrator filed an answer to the equitable amendment, denying the contract alleged. The case was before this court on a former occasion, when the following statement was made: "Under the pleadings the parties were at issue as to the alleged parol contract. The case as thus presented was tried under a stipulation between the parties to try the claim cases together. There was no order of court expressly providing for consolidating the claim cases as originally docketed. The jury returned two identical verdicts 'in favor of the claimant,' which by instruction of the judge were entered respectively on each of the statutory claims. The administrator made two motions for a new trial, based on the general grounds. Afterwards, treating the whole proceeding as one by Mrs. Salmon for both equitable and legal relief, the administrator presented two amendments of the motion for a new trial. A new trial was refused, and the administrator took a single bill of exceptions, assigning error on the refusal of a new trial." *McCrary* v. *Salmon,* 192 *Ga.* 313, 314 (15 S. E. 2d, 442). This court denied a motion to dismiss the writ of error, and reversed the judgment, holding that the evidence was not sufficient to prove the contract alleged, with that degree of certainty required by the law. In the opinion, after a quotation from *Ellis* v. *Reagan,* 172 *Ga.* 181 (157 S. E. 478), to the effect that in such cases, in order for the plaintiff to prevail, the alleged parol contract must be "established so clearly and satisfactorily by evidence as to leave no reasonable doubt on the minds of the jury," it was further stated: "In the instant case the contract alleged is that if Mrs. Salmon 'would look after and care for and nurse' Mrs. Grace 'and see that she was properly cared for as long as she lived, that she, Mrs. Grace, would execute a will giving to' Mrs. Salmon 'all of her property, both real and personal, and money, at the death of said Mrs. Grace.' Evidence that the contract was that Mrs. Salmon 'was to help look after' Mr. and Mrs. Grace 'and see they were looked after;' that Mrs. Grace 'said that she wanted'

Mr. and Mrs. Salmon 'to look after her and her business . . as long as they lived,' and that 'Mrs. Grace, in return for Mrs. Salmon agreeing to do the things . . just outlined, was to execute a will and leave everything she had, personal and real, to' Mrs. Salmon, does not prove the contract alleged in that degree of certainty stated in the foregoing decision. Such evidence, considered alone or in connection with other evidence as to declarations of Mrs. Grace as to her intention to leave her property to Mrs. Salmon at her death, was insufficient to support the alleged contract to make a will."

After that decision and return of the case to the trial court, the claimant amended paragraph 4 of the equitable amendment, by inserting at places designated the word "help" and the phrase "and to look after her business affairs," so as to make the paragraph read as follows: "4. At the same time the said Mrs. Grace contracted and agreed with petitioner that if petitioner would help look after and care for and nurse and see that petitioner was properly cared for as long as she lived and to look after her business affairs that she, Mrs. Grace, would execute a will to give to petitioner all of her property, both real and personal and money at the death of said Mrs. Grace." The case then proceeded to trial, and after the claimant had introduced evidence and rested, the judge, on motion of the administrator, granted a nonsuit. The claimant excepted.

Fred C. Salmon, husband of the claimant, testified: "Other than paying the premiums on the insurance policy it was also agreed that my wife and myself were to look after Mr. and Mrs. Grace, nurse and help nurse as long as they lived, and after their death the remaining part of the estate of Mr. and Mrs. Grace, the personal goods and things like that, were to go to my wife, and Mrs. Grace was to leave a will. . . As to whether or not I said Mr. Coker was present when this agreement was made, well, yes sir. . . As to what Mrs. Grace said while we were at Mr. Coker's office at the time the agreement was made relative to what she wanted Mrs. Salmon to do, well, she said she wanted the insurance payments made, and she also said there was no reason for carrying it except for somebody else, and that she wanted Mrs. Salmon to have it, and also wanted her to look after her business at the house and her business in general for her. . . Mrs. Salmon did the things she agreed to do." The witness further testified that the

conversation relied on occurred at Third Avenue Hotel in the office or place of business of W. H. Coker.

J. H. Lovelace testified that on a certain occasion he was present at the Third Avenue Hotel, having gone there to see Mr. Coker, and that Mr. and Mrs. Grace and Mr. and Mrs. Salmon were already there and in consultation with him, and were having some kind of papers made out, and while waiting for Mr. Coker the witness overheard some of the conversation. "They were having some kind of insurance transferred from Mr. and Mrs. Grace to Mrs. Salmon, and I heard Mr. and Mrs. Grace say that they were not able to take care of the payments on the insurance and not able to take care of themselves, and that what they had left when they died they wanted to go to Mr. and Mrs. Salmon; and there were some papers made out, but I don't know what the papers were."

The record contains other evidence besides that which has been quoted, but none was more direct or stronger for the plaintiff than the foregoing, as to the making of the alleged contract.

Under the settled rule as to the degree of mental conviction required in such cases, which rule was merely restated in the former decision in this case, the evidence was insufficient to authorize recovery, and for this reason the court did not err in awarding a nonsuit.

It will be seen that the contract as alleged contemplated services only for Mrs. Grace, the intestate, while, according to the evidence of Fred C. Salmon, the plaintiff was to help look after both Mr. and Mrs. Grace. Again, according to the allegations, only the estate of Mrs. Grace was involved in the agreement, while the evidence was to the effect that the remaining parts of the estates of both Mr. and Mrs. Grace were to go to Mrs. Salmon. Furthermore, the testimony of the witness Salmon was ambiguous as to whether all of the "remaining part of the estate" would go to Mrs. Salmon, or merely "the personal goods and things like that," whereas under the allegations the contract embraced all of Mrs. Grace's property, both real and personal.

Manifestly this evidence did not establish the *alleged* contract so clearly and satisfactorily as to leave no reasonable doubt in the minds of the jury as to its existence. Nor was the defect cured by the testimony of Lovelace or other evidence.

It is further insisted that in any event the evidence was suffi-

cient to show a gift of certain jewelry by Mrs. Grace to Mrs. Salmon, completed by delivery during Mrs. Grace's lifetime. Under the former decision, the equitable amendment was construed as converting the two claim cases into a suit for specific performance of an oral contract. Such being the nature of the case as it was finally laid, the plaintiff can not recover upon the theory of a completed gift.

From what has been said, the court did not err in granting a nonsuit as to all of the property in controversy.

*Judgment affirmed. All the Justices concur.*