THOMAS *v.* LOCKWOOD.

No. 14944.   October 13, 1944.

*Albert G. Ingram* and *W. K. Miller,* for plaintiff in error.
*Pierce Brothers,* contra.

BELL, Chief Justice. ██ In *Barlow* v. *Strange,* 120 *Ga.* 1015 (48 S. E. 344), it was said, on authority of previous decisions, that, in order to avoid a contract on account of mental incapacity, there must be an entire loss of understanding. Also, in the more recent case of *Higgins* v. *Trentham,* 186 *Ga.* 264 (2) (197 S. E. 862), this court approved, as stating a sound principle of law, an instruction that, "to establish incapacity in a grantor, he or she must have been shown to have been, at the time the contract was made, non compose mentis, which means entirely without understanding." See also *Ison* v. *Geiger,* 179 *Ga.* 798 (177 S. E. 596); *Taylor* v. *Warren,* 175 *Ga.* 800 (166 S. E. 225). The final test as to mental capacity is necessarily confined to the condition of the grantor's mind at the time the deed was executed. *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423); *Hillyer* v. *Ellis,* 171 *Ga.* 300 (155 S. E. 180); *Hill* v. *Deal,* 185 *Ga.* 42 (193 S. E. 858); *Scott* v. *Gibson,* 194 *Ga.* 503 (22 S. E. 2d, 51). Under the foregoing rules as applied to this case, we are of the opinion that the evidence did not authorize a finding that the deed was invalid because of incapacity of the grantor, but demanded a finding that the deed was valid, so far as related to that issue.

The only witnesses who saw the grantor on the day when the deed was executed all testified to facts showing that his mind was clear, and that he was mentally and physically competent to execute such deed. The witnesses who testified to this effect were the minister who had visited the grantor every day during his illness, the nurse who attended him, the attorney who drew the deed, and his physician. It appeared that the physician was not present at the time the deed was executed, but saw the grantor during the same day.

Reference to the plaintiff's witnesses will include the plaintiff herself, she having testified in her own behalf. None of these witnesses saw the grantor later than Friday before his death on Sunday night or early Monday morning, the deed having been executed on Saturday. While they testified to their conclusions as to

his mental and physical condition at the times when they saw him, none of them testified to such a state of facts as to make their testimony inconsistent with that of the witnesses who saw the grantor at the time the deed was executed. The facts to which they testified fell within the class of circumstantial evidence, bear-. ing only in an indirect manner upon the mental and physical condition of the grantor at the time the deed was executed, while the testimony of those who were present at its execution was in the nature of direct evidence, and therefore the following well-settled rule would seem to apply: "Direct and positive testimony, as distinguished from testimony .circumstantial, opinionative, or actually negative in character, which is given by an unimpeached witness as to the existence of facts apparently within his own knowledge, which is not in itself incredible, impossible, or inherently improbable, and which is not contradicted directly or indirectly by proof of facts or circumstances that could be taken as incompatible with such testimony, can not be arbitrarily rejected by a jury or other trier of the facts upon the mere surmise that it perhaps might not be in accord with the truth." *Lankford* v. *Hollon,* 187 *Ga.* 94, 102 (200 S. E. 243).

Although, as we have stated, the issue as to contractual capacity is to be determined by the condition of the grantor's mind at the time the deed was executed, we fully recognize the rule that, in determining such an issue, it is permissible to receive and consider evidence as to the state of the grantor's mind for a reasonable period both before and after the transaction under investigation; nor do we say that witnesses might not testify to such a previous state of mind as would authorize a finding against contractual capacity at the time the deed was executed, despite evidence of witnesses who were present at the time and testified that the grantor did have such capacity. See, in this connection, Code, § 38-102; *Terry* v. *Buffington,* 11 *Ga.* 337 (2) (supra); *Bridges* v. *Donalson,* 165 *Ga.* 228 (5) (140 S. E. 497); *Ellis* v. *Britt,* 181 *Ga.* 442 (182 S. E. 596); *Renfroe* v. *Hamilton,* 193 *Ga.* 194 (17 S. E. 2d, 709); 20 Am. Jur. 323, § 348; 28 Am. Jur. 697, § 59. The two rules are entirely consistent, and neither of them should be overlooked; the former referring to the ultimate fact, the latter to facts that are evidentiary only.

As just indicated, there was no material conflict between the

evidence by the witnesses for the plaintiff and that by the witnesses for the defendant. It seems that the witnesses for the plaintiff testified only as to their observations during their respective visits, which may have been only for short periods. If all that they said was true, it meant only that on several occasions during the week before the grantor's death he did not respond to the greetings or inquiries of these witnesses, and that from this fact and his appearance they considered him unconscious and in a dying condition. All of this could be true, and at the same time it could also reasonably be true, as testified by the minister and the nurse, that in their contacts with him he appeared to be rational; as testified by the minister, the nurse, and the attorney, that he was rational at the time of executing the deed; and as testified by the physician, that his mind was clear all the way through. As sick as the evidence shows this man was, he might not have felt like talking, and might have avoided doing so except as necessary to make his wants or desires known to those actually attending him. Nor, from the evidence as a whole, would it be unreasonable to conclude that, although at the times when the plaintiff's witnesses saw him he *appeared* to be unconscious and in a dying condition, he was yet physically and mentally capable of expressing himself to the defendant's witnesses at the times and in the manner stated by them, and competent to execute the deed in question at the time it was executed. It is the duty of jurors to reconcile the testimony of witnesses if it can be reasonably done, and there appears in this case no reason why all of the witnesses could not be telling the truth. It could not be concluded from the record that the witnesses for the plaintiff had better opportunity to know the real condition of the grantor, nor does any reason appear why they should have been considered more worthy of belief.

It is true that the witnesses for the defendant who were present at the signing of the deed were themselves in disagreement as to some matters—such as, whether the nurse or the minister called the attorney over the telephone; whether the information necessary for drawing the deed was given by the grantor himself, or whether he was asleep when the attorney arrived and was allowed to remain asleep until after the deed was drawn upon information given by another. But the contradictions as to these details did not furnish cause for impeachment, since they did not go to the question as to

448

mental capacity, which was sustained alike by the evidence of each of such witnesses.

It follows that the verdict was contrary to the evidence and without evidence to support it, so far as related to mental capacity of the grantor.

■ As to delivery of the deed, it appears that the attorney who drew it stated to the grantor that the moment the grantor touched the pen, the property became that of the grantee, and was no longer his; also that the attorney later delivered the deed to the grantee. This constituted a sufficient delivery under the law. In *O'Neal* v. *Brown,* 67 *Ga.* 707, this court held that: "The delivery of a deed consists in the transfer of possession and dominion and is complete at the moment when the deed is in the hands or power of the grantee with the consent of the grantor and with his intent that it should operate and enure as a muniment of title to the grantee. The presence of the latter is not necessary; it is sufficient that the deed goes out of the hands or control of the grantor with his intent that it should go to those of the grantee, and that it ultimately does so. Even though the deed reaches the grantee after the death of the grantor, having been previously left with a third person for the use of the grantee, it is a good delivery." And see *Willingham* v. *Smith,* 151 *Ga.* 102, 104 (106 S. E. 117); *Moseley* v. *Phœnix Mutual Life Ins. Co.,* 167 *Ga.* 491 (145 S. E. 877); *Preston* v. *Ham,* 156 *Ga.* 223 (1 c) (119 S. E. 658); *First National Bank of Cornelia* v. *Kelly,* 190 *Ga.* 603, 604 (2) (10 S. E. 2d, 66); *Cooper* v. *Littleton,* 197 *Ga.* 381 (29 S. E. 2d, 606). Accordingly, the verdict for the plaintiff cannot be sustained upon the theory that the jury were authorized to find that the deed was never delivered.

■ As to mental capacity to make a deed, the judge charged the jury: "If one should have mind and reason sufficient to have a decided and rational desire as to what disposition he wishes to make of his property and to clearly understand and appreciate the nature and consequences of his act in making a deed of gift and he should make such a deed of conveyance of his property, having at the time such decided and rational desire to do so, and mind and reason to clearly understand that the nature of his act was to execute a deed to his property and that the consequences of his act was to divest it in another, he would be capable of making a

deed of gift under the laws of this State though he might not have had a greater mental capacity than that. If you believe from the evidence and the circumstances of the case that he did not have such mental capacity at the time he signed the deed, as I have defined to you, in that event, you would find for the plaintiff." The judge also stated the contentions of the parties, and charged on the preponderance of evidence. In special ground 4 of the motion for new trial, the movant contended in effect that the judge erred in not instructing the jury that the law presumed that the grantor was sane when making the deed, and that the burden of showing the contrary was upon the person attacking such deed. If such a charge on presumption and the burden of proof was desired, a written request should have been made.

Special ground 5 asserted that the verdict was contrary to the charge above quoted. This ground presented no question which was not raised by the general grounds, and need not be separately passed upon. *Roberts* v. *Keeler,* 111 *Ga.* 181 (6) (36 S. E. 617); *Wight* v. *Schmidt,* 111 *Ga.* 858 (36 S. E. 937); *Palmer Manufacturing Co.* v. *Drewry,* 113 *Ga.* 366 (3) (38 S. E. 837); *Jeffers* v. *State,* 145 *Ga.* 74 (3) (88 S. E. 571).

Special ground 6 complained that the quoted excerpt was erroneous because of the clause referring to "decided and rational desire." There is no merit in this criticism. A charge in substantially the same language was approved in *Smith* v. *McClure,* 151 *Ga.* 484 (107 S. E. 330). See also Code, §§ 20-206, 113-202; *DeNieff* v. *Howell,* 138 *Ga.* 248 (5) (75 S. E. 202); *Whitehead* v. *Malcolm,* 161 *Ga.* 55 (129 S. E. 769); *Talton* v. *Richardson,* 163 *Ga.* 553 (136 S. E. 526).

▮ In special ground 7 it was contended that the court erred in failing to charge the law relating to gifts *causa mortis* as stated in the Code, § 48-201. This section provides as follows: "A gift in contemplation of death (donatio causa mortis) must be made by a person during his last illness or in peril of death, must be intended to be absolute only in the event of death, and must be perfected by either actual or symbolical delivery. Such a gift, so evidenced, may be made of any personal property by parol and proved by one or more witnesses." Such a charge would not have been applicable to any issue in the present case. See generally, in this

450

connection: 28 C. J. p. 684, § 92; 38 C. J. S. p. 895, § 72; 24 Am. Jur. 732, § 4.

As shown .in the first and second divisions of this opinion, the verdict for the plaintiffs was contrary to the evidence and without evidence to support it, and therefore contrary to law. For this reason alone, it was error to refuse a new trial.

*Judgment reversed. All the Justices concur, except*

ATKINSON, J., dissenting. I dissent from the ruling announced in the first headnote and corresponding division of the opinion, and from the judgment of reversal, as I think the evidence made a question for the jury to determine.